No. 42,013

Thomas Francis Lee, *Appellant*, v. The State of Kansas, State Highway Commission, Motor Vehicle Department, *Appellee*.

(358 P. 2d 765)

Opinion filed January 21, 1961.

*John Berglund*, of Clay Center, argued the cause and was on the brief for the appellant.

*Charles N. Henson, Jr.*, Assistant Attorney General, and *Henry Daniels*, of Topeka, argued the cause, and *John Anderson, Jr.*, Attorney General, was with them on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: Following his arrest on a charge of driving a motor vehicle while under the influence of intoxicating liquor, plaintiff was requested to submit to a blood test for the purpose of ascertaining the alcoholic content thereof. He refused. His driver's license was suspended and later revoked. He brought this action to compel reinstatement. He appeals from an adverse judgment.

A better understanding of the pertinent facts will be had if reference first is made to certain provisions of the motor vehicle code. Unless otherwise indicated, all references are to G. S. 1959 Supp.

8-1001 reads:

"Any person who operates a motor vehicle upon a public highway in this state shall be deemed to have given his consent to submit to a chemical test of his breath, blood, urine, or saliva for the purpose of determining the alcoholic content of his blood whenever he shall be arrested or otherwise taken into custody for any offense involving operating a motor vehicle under the influence of intoxicating liquor in violation of a state statute or a city ordinance and the arresting officer has reasonable grounds to believe that prior to his arrest the person was driving under the influence of intoxicating liquor. The test shall be administered at the direction of the arresting officer. If the person so arrested refuses a request to submit to the test, it shall not be given and the arresting officer shall make to the vehicle department of the state highway commission a sworn report of the refusal, stating that prior to the arrest he had reasonable grounds to believe that the person was driving under the influence of intoxicating liquor. Upon receipt of the report, the vehicle department of the state highway commission shall suspend for a period not exceeding ninety (90) days the person's license or permit to drive or nonresident operating privilege and, after granting the person an opportunity to be heard on the issue of the reasonableness of his failure to submit to the test, the vehicle department of the state highway commission may revoke the person's license or permit to drive or non-resident operating privilege."

8-1002 provides that upon the request of any person submitting to a chemical test under the act a report of the test shall be delivered to him.

8-1003 provides that only a physician or qualified medical technician acting at the request of the arresting officer can withdraw any blood of any person submitting to a chemical test under the act.

8-1004 provides that, without limiting or affecting the provisions of the above three sections, the person tested shall have a reasonable

opportunity to have an additional chemical test by a physician of his own choosing, and if the officer refuses to permit such additional chemical test to be taken the original test shall not be competent in evidence.

8-1005 provides that in any criminal prosecution for the violation of the laws of the state relating to the driving of a motor vehicle while under the influence of intoxicating liquor, or the commission of negligent homicide or manslaughter while under the influence of intoxicating liquor, or in any prosecution for violation of a city ordinance relating to the driving of a motor vehicle while under the influence of intoxicating liquor, evidence of the amount of alcohol in the defendant's blood at the time alleged as shown by chemical analysis of the defendant's blood, urine, breath or other bodily substance, may be admitted, and if there was at that time less than 0.15 percent by weight of alcohol in the defendant's blood it shall be presumed that the defendant was not under the influence of intoxicating liquor, but if there was at such time 0.15 percent or more by weight of alcohol in the defendant's blood it shall be presumed that the defendant was under the influence of intoxicating liquor.

8-1006 provides that the foregoing section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether or not the defendant was under the influence of intoxicating liquor.

8-259 reads:

"Any person denied a license or whose license has been canceled, suspended, or revoked by the department except where such revocation is mandatory under the provision of section 8-254 of the General Statutes of 1949 as amended shall have the right to file a petition within sixty (60) days thereafter for a hearing in the matter in the district court in the county wherein such person shall reside, and such court is hereby vested with jurisdiction, and it shall be its duty to set the matter for hearing upon ten (10) days' written notice to the department, and thereupon to take testimony and examine into the facts of the case, and to determine whether the petitioner is entitled to a license or is subject to suspension, cancellation, or revocation of license under the provisions of this act: *Provided,* Such petitioner shall file in such court a bond in the amount of one hundred dollars ($100) conditioned that he will without unnecessary delay appear in such court at the time set by the court for hearing said matter and pay all costs in the event the court determines that said petitioner's license is subject to suspension, cancellation or revocation: *Provided further,* The trial on appeal as herein provided for shall be a trial *de novo* and the licensee shall have the right of trial by jury upon demand therefor: *Provided further,* The court having jurisdiction of said

appeal, on proper application being made, may order a stay of any suspension or revocation pending final judgment, and if the license has been surrendered by the licensee said order shall direct the department to return such license to the licensee, and until such license is so returned such stay order shall be deemed equivalent to the operator's or chauffeur's license so surrendered."

The facts are not in dispute.

On August 28, 1959, plaintiff, a resident of Riley county, was arrested in Manhattan on a charge of driving a motor vehicle while under the influence of intoxicating liquor. Pursuant to the provisions of 8-1001, above, he was requested by the arresting officer to submit to a blood test to determine its alcoholic content. A physician was present to administer the test. Neither the arresting officer nor the physician suggested or requested a test of plaintiff's breath, urine or saliva. Plaintiff refused to submit to a blood test and none was made. In compliance with the provisions of 8-1001, above, the arresting officer filed with the vehicle department of the state highway commission a sworn report of the matter. Upon receipt of the report the department suspended plaintiff's driver's license for a period not exceeding ninety days.

Plaintiff, contending that he was a diabetic and that he should have been given his choice of a breath, blood, urine or saliva test, requested a hearing before the vehicle department on the question of the reasonableness of his refusal to submit to the blood test. The request was granted and a hearing was held on October 12, 1959. Plaintiff offered no evidence. The suspension was sustained and later, on November 25, 1959, after reviewing the proceedings had at the hearing of October 12, 1959, the vehicle department issued an order revoking plaintiff's license to drive.

Plaintiff then, under the authority of 8-259, above, brought this action in the district court of Riley county to compel defendant vehicle department to reinstate his driver's license, alleging, among other matters, that under the statute 8-1001, above, a driver's consent to a chemical test of his breath, blood, urine or saliva is not given, but rather the consent is to his choice of the four methods of testing, and that the procedure followed in his case denied to him due process of law and violated his rights under section one of our bill of rights, and the fifth and fourteenth amendments to the federal constitution.

Issues were joined and the case was tried by the court on a stipulation of facts, as heretofore related. The court refused to order reinstatement of the license, and plaintiff has appealed.

Before discussing plaintiff's contentions, it should be stated that we are in no way concerned with any criminal prosecution of plaintiff on a charge of driving while under the influence of intoxicating liquor. There is nothing in the record to indicate what disposition was made of that phase of the matter. Furthermore—other than his bald contention, unsupported by any proof—there is nothing in the record to indicate or establish that plaintiff was a diabetic at the time in question.

Under the facts of record, the issues are narrowed to the question of the validity of 8-1001, above, and the proceedings had thereunder resulting in the suspension and subsequent revocation of plaintiff's license to drive a motor vehicle. Stated another way, the only question presented concerns the power of the state, first to suspend, and later revoke, a driver's license when the licensee, upon being arrested on a charge of driving a motor vehicle while under the influence of intoxicating liquor, refuses to submit to one of the statutory tests for the purpose of determining the alcoholic content of his blood, when requested to do so by the arresting officer.

It is an elementary rule of law that the right to operate a motor vehicle upon a public street or highway is not a natural or unrestrained right, but a *privilege* which is subject to reasonable regulation under the police power of the state in the interest of public safety and welfare. (5A Am. Jur., Automobiles and Highway Traffic, § 127, p. 318; 60 C. J. S., Motor Vehicles, § 146, p. 469.) In *State v. Razey*, 129 Kan. 328, 282 Pac. 755, 66 A. L. R. 1225, where a statute requiring a person who has caused injury to another by the operation of a motor vehicle on a public highway to stop and give certain information to the injured person and to report the matter to law-enforcement officials, was under attack, it was said:

"The requirements of the statute are proper police regulations necessitated by the use of motor vehicles on the highway. The information which a motorist who causes injury to another is required to give is information pertinent to the accident, not irrelevant information. Defendant's privilege of operating an automobile on the streets of Wichita was conditioned on her obligation to stop and give the statutory information and report the injury to the public officer. This condition was binding upon defendant as upon all who accept the privilege of operating motor cars on the public highways." (p. 330.)

And see *McCarry v. Center Township*, 138 Kan. 624, 27 P. 2d 265, and *Miller v. City of El Dorado*, 152 Kan. 379, 103 P. 2d 835.

The use of the public highways by motor vehicles, with its conse-

quent dangers, renders the necessity of regulation apparent. Courts may take judicial notice of the problem, both local and national, of the drunken driver on the highways with its ever increasing toll of injuries and death. In line with many other states, Kansas, through its inherent police regulatory powers, in an effort to promote public safety and welfare, has seen fit to enact the statutes heretofore quoted or summarized—one of which, 8-1001, puts a choice to a motorist who is accused upon reasonable grounds of driving while under the influence of intoxicating liquor. In this connection see *City of Garden City v. Miller*, 181 Kan. 360, 365, 311 P. 2d 306, and *State v. Barry*, 183 Kan. 792, 797, 332 P. 2d 549.

One of plaintiff's complaints is that under the statute (8-1001) he or any other driver should be given his choice of the four mentioned tests, and that he was not afforded such right. It is further argued that the drawing of blood "shocks the conscience" and is inherently "brutal and offensive."

We do not agree. In the first place, the statute says that the test shall be administered at the direction of the arresting officer. It is common knowledge that few areas in the state have the technical equipment and facilities to administer all of the tests. 8-1003, above, provides that only a physician or qualified medical technician, acting at the request of the arresting officer, is permitted to withdraw any blood of a person submitting to a chemical test under the act. In this day and age there is nothing brutal or offensive about that when done under the protective eye of a physician or qualified medical technician, but rather is admittedly a scientifically accurate method of detecting alcoholic content in the blood. Chemical tests eliminate mistakes from objective observation alone, and they disclose the truth when a driver claims that he has drunk only a little and could not be intoxicated. They protect the person who has not been drinking to excess but has an accident and has the odor of alcohol on his breath. They save a person from a drunken driving charge when his conduct creates the appearance of intoxication but who actually is suffering from other causes over which he has no control. (See *Breithaupt v. Abram*, 352 U. S. 432, 1 L. Ed. 2d 448, 77 S. Ct. 408.)

The statute does not compel one in plaintiff's position to submit to a blood test, and does not require one to "incriminate himself" within the meaning of constitutional provisions. And neither is it violative of due process (*Breithaupt v. Abram*, above). It gives

the driver the right of choice of the statutory suspension of his license, and further gives him the right to a hearing on the question of the reasonableness of his failure to submit to the test. Furthermore, under 8-259, above, he has the right of appeal to the district court of the county of his residence. Each of these procedures was afforded to plaintiff.

Although plaintiff's abstract, including the allegations of his petition, refers to his license as a "driver's" license, his brief attempts to make some point of the fact that his license actually was what is known as an "operator's" license, and that the appeal statute, 8-259, discriminates between the two types of license, thus denying equal protection of the laws.

One answer to this contention is that plaintiff is in no position and has no standing to raise it, for he was afforded both the administrative hearing under 8-1001 and the judicial appeal under 8-259.

Other contentions are made but require no mention, for we do not propose to indulge in an academic or theoretical discussion of matters not directly in issue. Those interested in various related phases of this matter will find annotations at 125 A. L. R. 1459; 159 A. L. R. 209; 25 A. L. R. 2d 1407; 46 A. L. R. 2d 1176, and cases cited in A. L. R. 2d 1960 Blue Book Supplement Service, pages 2148 and 3103. See also *City of Garden City v. Miller*, above; *State v. Barry*, above; *State v. Bailey*, 184 Kan. 704, 339 P. 2d 45; *City of Wichita v. Depee*, 185 Kan. 22, 340 P. 2d 924; *City of Wichita v. Showalter*, 185 Kan. 181, 341 P. 2d 1001; 3 Kan. L. Rev. 181, 208, and the December 1957 issue of Kansas Judicial Council Bulletin, page 67.

Our conclusion is that the provisions of 8-1001 and the proceedings had in this case resulting in the revocation of plaintiff's license to drive a motor vehicle are not invalid on any of the grounds urged, and the judgment of the trial court is affirmed.