LeRoy Dale Gottschalk, appellee, v. William F. Sueppel, Commissioner of Iowa Department of Public Safety, appellant.

No. 51828.

(Reported in 140 N.W.2d 866)

MARCH 8, 1966.

REHEARING DENIED MAY 3, 1966.

Lawrence F. Scalise, Attorney General, Joseph S. Brick and Michael S. McCauley, Assistant Attorneys General, for appellant.

William B. Norton, of Lowden, for appellee.

GARFIELD, C. J.—The commissioner of public safety has appealed from an order of the district court vacating the revocation for 120 days of plaintiff Gottschalk's driver's license because

of his refusal to submit to a chemical test under the Uniform Chemical Test for Intoxication Act, frequently called the Implied Consent Law, sections 37 through 50, chapter 114, Laws of the Sixtieth General Assembly.

The court's decision is based on its conclusion plaintiff should have had the opportunity to consult with his attorney before exercising the option of consenting or refusing to submit to a chemical test under the Act, citing Escobedo v. Illinois, 378 U. S. 478, 84 S. Ct. 1758, 12 L. Ed.2d 977.

We think the Escobedo case does not support the trial court's view nor has there been cited any provision of the federal or state constitution, any statute or reported court decision which does.

On the evening of July 1, 1964, plaintiff was involved in a motor-vehicle collision in the town of Lowden. In response to a call Deputy Sheriff Hancock went to Lowden, investigated the accident, talked with plaintiff and others, placed him under arrest for operating a motor vehicle while intoxicated and drove him to Tipton, the county seat. There a sergeant of the state highway patrol read to him a written request of the sheriff and Deputy Hancock that a specimen of his blood be withdrawn which plaintiff refused. A similar written request was then made that a specimen of his urine be withdrawn which plaintiff also refused. He also refused on request to submit to other tests.

The written requests plainly stated that a refusal to submit to a chemical test would result in a revocation of plaintiff's driver's license for a period of 120 days to a year, and the officers also explained to him several times what would happen to him if he did not consent to a blood or urine test. Plaintiff still adhered to his refusal. A physician was available to withdraw the blood.

The sheriff and his deputy made a sworn report to the commissioner of public safety that they had reasonable grounds to believe plaintiff was operating a motor vehicle while intoxicated, they had placed him under arrest for such offense and he refused to submit to the requested chemical testing. Thereupon the commissioner revoked plaintiff's license to drive.

At plaintiff's request a hearing was had before the commis-

sioner's authorized agent resulting in an order sustaining the revocation of the license. Section 44 of chapter 114, Laws of the Sixtieth General Assembly, provides: "The hearing shall be recorded and its scope shall cover the issues of whether a peace officer had reasonable grounds to believe the person to have been operating a motor vehicle * * * while in an intoxicated condition, whether the person was placed under arrest and whether he refused to submit to the test or tests."

The affirmative of the three issues referred to in the quoted provision was fully shown at the hearing. It also appeared by Deputy Hancock's testimony that after he and plaintiff arrived at Tipton plaintiff asked to have his attorney called. He lived at Lowden, about 15 miles distant. The attorney was called by phone, could not be reached and a message was left for him to call. The attorney later called the sheriff but was not allowed to talk over the phone with plaintiff because of the prevailing policy not to allow one under arrest for intoxication to talk over the phone. If an attorney came to the sheriff's office he was permitted to confer with anyone under arrest. The sheriff offered to relay any message to plaintiff from the attorney and informed him plaintiff was under arrest.

It also appeared at the hearing that about a half hour after plaintiff was taken to jail from the sheriff's office the attorney came there and conferred with his client. This was probably within the two hours after the arrest was made, during which a chemical test may be provided (section 39 of chapter 114). There is no evidence of any attempt to consent to a chemical test after the attorney saw plaintiff. The attorney argued to the hearing officer that when he telephoned the sheriff's office he "should have been given an opportunity to advise the client what the law was and that he had to take a test."

The only testimony by plaintiff at the administrative hearing is that he told Deputy Hancock at Lowden, rather than Tipton, he wanted his attorney.

It was shown that the sheriff and his deputy were prepared to administer a chemical test of both blood and urine but not other tests of breath or saliva.

It also appeared plaintiff had previously been convicted of

operating a motor vehicle while intoxicated in Cedar County in 1960.

Upon plaintiff's petition the district court heard the matter upon the transcript of the testimony and other proceedings on which the commissioner and his authorized agent acted in revoking the license (see section 45) and, as stated, the court vacated the revocation.

Incidentally, we may observe that section 755.17, Code, 1962, entitled "Communications by arrested persons", provides in part: "If the person arrested or restrained is intoxicated, * * * the [phone] call shall be made by the person having custody. An attorney shall be permitted to see and consult the person arrested or restrained alone and in private at the jail or other place of custody."

I. We set out the pertinent provisions of our Uniform Chemical Test for Intoxication Act (see section 50), commonly called the Implied Consent Law, chapter 114, Sixtieth General Assembly:

"Section 39. Any person who operates a motor vehicle * * * under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while in an intoxicated condition, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle * * * while in an intoxicated condition, and only after the peace officer has placed such person under arrest for the offense of operating a motor vehicle while in an intoxicated condition. If such person requests that a specimen of his blood not be withdrawn, then a specimen of his breath, saliva, or urine shall be withdrawn at the written request of such peace officer; provided, however, that if such person refuses to submit to any chemical testing, no test shall be given, and the provisions of section 43 of this Act shall apply. However, if such peace officer

fails to provide such test within two hours after such arrest, no test shall be required, and there shall be no revocation under the provisions of section 43 of this Act."

Section 40 provides that only a licensed physician, medical technologist or registered nurse may withdraw such body substance for determining alcoholic content of blood and that the person arrested may have independent chemical tests made in addition to any test at a peace officer's request.

"Section 42. A peace officer shall advise any person who is requested to take any chemical test that a refusal to submit to such test will result in revocation of the person's license or privilege to operate a motor vehicle; * * *." (As stated, the officers complied with this requirement.)

"Section 43. If a person under arrest refuses to submit to the chemical testing, no test shall be given, but the commissioner, upon the receipt of a sworn report of the peace officer that he had reasonable grounds to believe the arrested person to have been operating a motor vehicle * * * while in an intoxicated condition, that he had placed such person under arrest for the offense * * * and that the person had refused to submit to the chemical testing, shall revoke his license or permit to drive * * * for * * * not less than 120 days nor more than one year; * * *."

Section 44, part of which is quoted, supra, provides for the hearing before the commissioner or his authorized agent on the question of revocation. As indicated, section 45 provides for the hearing de novo in the district court on the transcript of the testimony and all other proceedings on which the revocation was based. Section 45 also authorizes appeal from the court's order to this court by the person or the commissioner in accordance with the Rules of Civil Procedure.

The statutes above referred to also appear as chapter 321B, Volume 15, Iowa Code Annotated, 1964 Pocket Part.

II. Plaintiff asserts and the trial court evidently held he had a right under Amendment 6 to the Federal Constitution to consult with counsel before consenting to a chemical test or refusing. So far as pertinent this amendment provides, "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence." Section 9, Article I, of our state

constitution contains an almost identical provision. Neither provision is applicable to this administrative proceeding resulting in the license revocation.

Nor is the Escobedo decision, supra, applicable. It was a criminal prosecution, involving admissibility of a confession elicited after prolonged police interrogation after the accused was denied an opportunity to consult with his lawyer and without warning him of his right to remain silent. The court held no statement elicited during the interrogation could be used against the accused "at a criminal trial."

■ Decisions which recognize the obvious fact that the right to counsel under Amendment 6 is limited to "criminal prosecutions" include Hannah v. Larche, 363 U. S. 420, 440, n16, 80 S. Ct. 1502, 4 L. Ed.2d 1307, 1320; United States v. Zucker, 161 U. S. 475, 480, 481, 16 S. Ct. 641, 40 L. Ed. 777, 779; United States v. Scully, 2 Cir. N. Y. (Medina, J.), 225 F.2d 113, 116; United States v. Steel, D. C. N. Y., 238 F. Supp. 575, 577. See also Re Groban, 352 U. S. 330, 77 S. Ct. 510, 1 L. Ed.2d 376.

An annotation to Re Groban at pages 1865, 1866 of 1 L. Ed.2d states: "At the outset it is to be noted that the courts have frequently pointed out that the Sixth Amendment to the Federal Constitution, providing for the assistance of counsel to the accused 'in all criminal prosecutions', is subject to the 'criminal prosecution' limitation stated therein, and, as a result, has no bearing on the question whether there is a right to counsel in administrative proceedings."

Finocchairo v. Kelly, Commissioner, 11 N. Y.2d 58, 59, 226 N. Y. S.2d 403, 181 N.E.2d 427, 428, certiorari denied 370 U. S. 912, 82 S. Ct. 1259, 8 L. Ed.2d 405, reverses such an order as the trial court made here on substantially the same ground. The holding is: "So far as the revocation of petitioner's license for his conditional refusal to take a blood test is concerned, the constitutional rights of petitioner were not invaded because of the refusal of his request for counsel."

■ As plaintiff concedes, the proceeding resulting in the revocation of plaintiff's license was an administrative one, not a criminal prosecution. Section 45 of chapter 114 (section 321B.9, Iowa Code Annotated) refers to the hearing before the

commissioner or his authorized agent as an administrative hearing. A similar proceeding resulting in suspension of the license of a motorist under the Motor Vehicle Financial Responsibility Act (Code chapter 321A) is referred to as an administrative proceeding in Doyle v. Kahl, 242 Iowa 153, 158, 46 N.W.2d 52, 55.

"The same motor vehicle accident may give rise to two separate and distinct proceedings. One, a civil and administrative licensing procedure instituted by the Motor Vehicle Commissioner to determine whether a person's privilege to drive shall be revoked; the other, a criminal action, instituted by the People in the appropriate court to determine whether a crime has been committed. Each proceed independently of the other, the outcome of one action is of no consequence in the other. [Finocchairo v. Kelly, 11 N. Y.2d 58, 226 N. Y. S.2d 403, 181 N.E.2d 427]." In re Bowers v. Hults, 42 Misc.2d 845, 848, 249 N. Y. S.2d 361, 364. See annotation, 88 A. L. R.2d 1064, 1067.

"* * * we are in no way concerned with any criminal prosecution of plaintiff on a charge of driving while under the influence of intoxicating liquor. There is nothing in the record to indicate what disposition was made of that phase of the matter." Lee v. State, 187 Kan. 566, 570, 358 P.2d 765, 768.

"The fact of acquittal of a criminal charge of operating a motor vehicle while under the influence of alcoholic liquor does not have any bearing upon a proceeding before the director for the revocation of a driver's license under the provisions of law separate and distinct from criminal statutes." Prucha v. Department of Motor Vehicles, 172 Neb. 415, 423, 110 N. W.2d 75, 81, 88 A. L. R.2d 1055, 1062. See also annotation, 88 A. L. R.2d 1064, 1076, 1077.

As indicated from the above quotations, we are not concerned with what evidence would be admissible if plaintiff were on trial for the offense of "OMVI." The record is silent as to whether he was indicted or informed against for such offense and, of course, as to the disposition of any such charge.

III. There is no merit to plaintiff's contention he was deprived of due process of law by not having an opportunity to confer with his attorney before electing to consent to a chemical

test or to refuse. This contention seems not to have been urged upon, or considered by, the district court.

 Of course the essentials of due process of law are notice and opportunity to be heard. Blew v. Powers, 257 Iowa 1112, 1116, 136 N.W.2d 273, 276, and citations. We have held suspension of a driver's license under Code chapter 321A (Motor Vehicle Financial Responsibility Act) without a hearing is not a denial of due process. "The fallacy of this claim is that his so-called property right is not such in the ordinary sense. It is a privilege granted to him under certain specific conditions, subject to all laws pertaining thereto at the time the same is issued or may be later enacted, if otherwise valid." Authorities are cited. Doyle v. Kahl, supra, 242 Iowa 153, 159, 46 N.W.2d 52, 55. See also Lee v. State, 187 Kan. 566, 358 P.2d 765, 769, and citations.

Doyle v. Kahl is followed in Spurbeck v. Statton, 252 Iowa 279, 287, 106 N.W.2d 660, 664, 665, as to suspension of a license under Code section 321.210(1) without a hearing "upon a showing by its [department's] records or other sufficient evidence that the licensee: 1) Has committed an offense for which mandatory revocation of license is required upon conviction." The Spurbeck opinion points out that such summary action is a proper exercise of the police power and "The concept of due process of law does not necessarily and under all circumstances require notice and hearing before official action is taken." (Citations)

See also Hiatt v. Soucek, 240 Iowa 300, 36 N.W.2d 432; Prucha v. Department of Motor Vehicles, supra, 172 Neb. 415, 110 N.W.2d 75, 82, 88 A. L. R.2d 1055, 1063, and numerous citations.

The annotation in 88 A. L. R.2d 1064, 1068, states: "The courts have looked favorably upon statutes which gave to motor vehicle operators the choice of submitting to a sobriety test or losing their licenses because of their refusal, and, with the exception of one court which had under consideration the provisions of the New York statute as first enacted, have rejected various objections based on the constitutionality of the statutes, or of particular administrative action thereunder."

The deficiencies just referred to in the first New York statute are supplied by the present New York statute and are not present in the Iowa Act.

At both the administrative hearing before the commissioner's authorized agent and the de novo hearing before the district court plaintiff was represented by counsel of his choice.

No authority is cited which supports the view plaintiff was denied due process of law by not having opportunity to confer with his attorney before the attorney came to the jail to see his client. The only delay chargeable to the officers in any event is the time it would take the attorney to drive the 15 miles from Lowden to Tipton after being informed by phone his client was under arrest for "OMVI." As stated, no attempt was made after plaintiff's conference with his attorney to withdraw his refusal to submit to a chemical test. So far as suggested, plaintiff would have refused the test if he had conferred with his attorney before the officers requested his consent.

IV. The district court's Findings of Fact and Conclusions of Law both recite that the record does not show the written requests for plaintiff to submit to a chemical test were actually handed to him by the officers. The findings further recite that the written requests were read to plaintiff word for word by the state patrolman and "In spite of numerous attempts, plaintiff refused to submit to either a blood or urine test." Plaintiff seeks to uphold the court's order on the ground the record does not show the written requests were actually handed to plaintiff for him to read. We cannot sustain the contention under the circumstances here.

We may observe the court's order was not placed upon the ground now suggested but, as stated, upon the ground plaintiff should have had the opportunity to consult his attorney before exercising the option to consent to, or refuse, the test, citing the Escobedo decision, supra. The court's Conclusions of Law indicate plaintiff should have been allowed to talk to his attorney over the phone when the attorney called the sheriff's office rather than after he could drive to Tipton for a personal interview.

Further and more important, the record does not show the contention now made was made in the administrative hearing or

in the district court although plaintiff was represented by his attorney in both. Counsel examined Deputy Hancock at length without attempting to show the written request for a chemical test was not handed to plaintiff. As before indicated, his attorney did not ask plaintiff as a witness whether the written request was handed him. In counsel's argument to the hearing officer he discussed the grounds on which it was contended the revocation should be annulled without suggesting the contention now made.

The formal petition in district court as amended a month and eight days later, on the day of the hearing there, also did not raise the contention. For all we know, plaintiff was given the written requests although the record is silent on the matter. Plaintiff is not entitled to urge in this court that the revocation order should be annulled on a ground not previously raised by him and of which the commissioner was not apprised. Gross v. Hocker, 243 Iowa 291, 296, 51 N.W.2d 466, 468, 469; Jensvold v. Chicago G. W. R. Co., 236 Iowa 708, 713–715, 18 N.W.2d 616, 619, 620; Phinney v. Montgomery, 218 Iowa 1240, 1246, 1247, 257 N.W. 208, and citations in these opinions.

Still further, the statute does not provide that the written request of the officer for a chemical test be handed or given to the arrested motorist or served upon him in the manner of an original notice commencing a civil action. It provides merely "The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer * * *." It is fair to assume the statute would have provided the written request be handed or given the motorist if the legislature intended such a requirement. It is not our province to write such a requirement into the statute.

V. Finally, plaintiff contends the court's order should be upheld on the ground he refused to take only a test of his blood and urine when requested and was not given the opportunity to submit to a test of his breath or saliva because neither was made available to him. As before indicated, there is undisputed testimony plaintiff "refused to do anything." As stated, there is evidence the officers were equipped for tests of blood and urine but not of breath or saliva.

1184

The argument is that upon plaintiff's refusal to submit to a blood test he had the choice as to which of the other three tests (urine, breath and saliva) he would take and unless he also refused to take all these three his license could not be legally revoked. Although the trial court did not rule on this contention plaintiff advanced it and so is entitled to urge it here.

■ We cannot sustain the contention. We think a fair construction of section 39 of chapter 114, supra, is that if an arrested motorist requests that a specimen of his blood not be withdrawn, the officer may then request a specimen of breath, saliva or urine for chemical testing. The choice as to which of the three is requested is the officer's, not the motorist's.

Section 39 provides the motorist "shall be deemed to have given consent to the withdrawal * * * of *specimens* of his blood, breath, saliva, or urine, and to a chemical test *or tests* thereof, * * *." Also that "The withdrawal of such *body substances,* and the test or tests thereof, shall be administered at the written request of a peace officer * * *." And, finally, that if a specimen of blood is refused "then a specimen of his breath, saliva, or urine shall be withdrawn *at the written request of such peace officer; * * *.*" (Emphasis added.)

The statute thus states consent is given to the withdrawal of *specimens* of the named body substances, not of a specimen of the one body substance the motorist selects, and to a test *or tests* thereof; also that the withdrawal and the test or tests are at the written request of the officer, thus implying the choice is his, not the motorist's. The legislature could hardly have intended that every peace officer be equipped at all times to administer all four chemical tests nor to provide means whereby the law could be evaded by the motorist's choice of a test he knew the arresting officer was not equipped to administer.

The construction we give the statute is given a similar statute in Lee v. State, supra, 187 Kan. 566, 358 P.2d 765, 769, and Timm v. State, N. D., 110 N.W.2d 359, 363, and a more restrictive statute in Stensland v. Smith, 79 S. D. 651, 654, 116 N.W.2d 653, 655. No judge dissented from any of these opinions.

The Stensland opinion concludes: "In our opinion, authority to administer the test to be given implies authority to select

such test. All the starch would be taken out of the law if arrested drivers could pick and choose the type of test to be taken. As the Kansas court pointed out in Lee v. State, 187 Kan. 566, 358 P.2d 765, few communities have the technical equipment and trained personnel available to administer all of the different chemical tests mentioned in the act. By choosing a test not available in the area of arrest a driver could easily and effectively circumvent the law. Such a built-in escape hatch was never intended by our legislature."

Our construction of the statute also corresponds with that of the attorney general in an opinion of his staff to the commissioner on June 27, 1963 (1964 Report of Attorney General, page 304). Although of course this opinion is not binding upon us it does deserve the respectful consideration we give it. See, e.g., Lamb v. Kroeger, 233 Iowa 730, 738, 739, 8 N.W.2d 405, 409; State v. Robbins, 235 Iowa 602, 608, 609, 15 N.W.2d 877, 880, and citations; Yarn v. City of Des Moines, 243 Iowa 991, 996, 997, 54 N.W.2d 439, 442, and citations. The attorney general's interpretation of this Act was made less than two months after the Act was approved and was not disturbed by the Sixty-first General Assembly.

Plaintiff cites Ringwood v. State, 8 Utah2d 287, 333 P.2d 943, on the point now considered. The Utah statute differed from the Uniform Act passed in Iowa and many other states in at least one important respect. A motorist in Utah was deemed to have consented "to a chemical test of * * * his breath, blood, urine, or saliva," not "to the withdrawal of *specimens*" and "to a chemical test or tests thereof" as in Iowa. Timm v. State, supra, points out the restrictive nature of the Utah statute and reverses a trial court decision which relied upon Ringwood v. State. Stensland v. Smith, supra, refuses to follow the Utah case although the South Dakota statute is similar to Utah's. So far as we are advised, Ringwood v. State has not been followed in any other jurisdiction.

VI. We note that by reason of an ex parte stay order of the district court and the time consumed since the order was made and the court's decision was filed plaintiff has apparently been permitted to drive a motor vehicle about 19 months after

revocation of his license by the commissioner was to take effect. Five months elapsed after appellant's brief was filed in this court until appellee's brief was filed although our rules allow only 30 days (R. C. P. 343).

The order appealed from is reversed and the cause is remanded for affirmance of the revocation of plaintiff's license.—Reversed and remanded.

All JUSTICES concur except RAWLINGS, J., who concurs in the result, and THORNTON and BECKER, JJ., who dissent.