Kenneth Francis KRUEGER, Appellee,

v.

Jack FULTON, Commissioner of Iowa Department of Public Safety, Appellant.

No. 53611.

Supreme Court of Iowa.

July 24, 1969.

Richard C. Turner, Atty. Gen., and Joseph W. Zeller, Asst. Atty. Gen., for appellant.

E. Raymond Mick, Knoxville, for appellee.

MOORE, Justice.

The commissioner of public safety has appealed from an order of the district court vacating the revocation for 120 days of the driver's license of plaintiff, Kenneth Francis Krueger, because of his refusal to submit to a chemical test under chapter 321B, Code, 1966, frequently called the Implied Consent Law.

The court at the close of the trial found plaintiff, following his arrest for operating a motor vehicle while intoxicated, had refused to take a chemical test but because of a subsequent demand by plaintiff's attorney such a test be made, the commissioner had no right to suspend plaintiff's driver's license or privilege.

At 2:40 a. m., October 13, 1968, Iowa highway patrolman, Gerald Kephart, arrested Krueger on a public highway nine miles east of Knoxville and took him to the Knoxville police station where he was charged with operating a motor vehicle while intoxicated. At the arrest scene the officer orally gave the "Miranda Warning" and on arrival at the station Kephart "read word for word off this Miranda Warning (card) for him". Krueger was then given an opportunity to telephone a member of his family or an attorney but declined to do so. At 3:15 a. m. Kephart orally and in writing first requested Krueger to consent to take a blood test and later to submit a urine specimen for chemical tests to determine alcoholic content. As required by Code section 321B.6 the officer advised Krueger a refusal to submit to a test would result in revocation of his driver's license or privilege for at least 120 days. Krueger orally and by signed statement refused to submit to these tests.

On completion of certain written reports Krueger was again asked if he wanted to call anyone. He then asked one of the officers present to call Mr. Mick, his attorney, and report the arrest. This was done. Mr. Mick stated he would be at the station within 15 or 20 minutes. He arrived in about 20 minutes and was advised his client had been transferred to the county jail, a few blocks away. On arrival at the county jail Mr. Mick was unable to gain entrance and returned to the station. Officer Kephart, who had taken Krueger's dalmatian dog to his home in Knoxville, was then called by radio and returned to the station. He accompanied the attorney back to the county jail where he was admitted to see his client. It was then 4:25 a. m. Kephart left in response to a radio call to check a traffic violation six miles east of Knoxville. After consulting his client a few minutes the attorney returned to the police station and by radio at 4:38 a. m. advised Kephart his client was requesting a blood test. The officer replied that the two-hour limitation period was up or about up and it was too late to take a blood test.

Patrolman Kephart's sworn report to the commission of public safety stated he had reasonable grounds to believe Krueger was operating a motor vehicle while intoxicated, he had placed him under arrest for such offense and Krueger refused to submit to the requested chemical testing. The written requests of the patrolman together with Krueger's signed refusals to submit thereto were made a part of the report. Thereupon the commissioner revoked plaintiff's license to drive.

At Krueger's request a hearing was had before the commissioner's authorized agent. The only testimony taken was that of patrolman Kephart. He was thoroughly examined by Attorney Mick. He related the facts which we have set out above. His report to the commissioner was made a part of the record. The hearing agent sustained the 120-day revocation of Krueger's driver's license.

Krueger then appealed to the district court and pursuant to section 321B.9 a certified copy of the testimony taken before the hearing officer and all other proceedings was filed in the district court where the matter was heard de novo. In the trial court only patrolman Kephart's

testimony was taken. It was substantially the same as before the hearing agent.

The commissioner has appealed from the trial court's order vacating revocation of Krueger's driver's license. He asserts the trial court erred (1) in concluding plaintiff, after consulting with counsel, had a right to retract his refusal of a blood test, although the two-hour limitation was ended or about to end and (2) in holding arrangements should have been made to have granted the test even though it may have actually occurred after the two-hour period referred to in section 321B.3.

I. Code section 321B.9 provides the district court shall hear this type of case de novo and shall affirm or vacate the decision of the commissioner or his authorized agent. It grants a right of appeal to this court "in accordance with the Iowa Rules of Civil Procedure". As a case is heard in the trial court it is generally so considered on appeal. Our review here is de novo. Buda v. Fulton, Iowa, 157 N.W.2d 336, 338. With no conflict in the evidence this rule is of no particular importance. Our problem is primarily interpretation of section 321B.3. It provides: "Implied consent to test. Any person who operates a motor vehicle in this state upon a public highway, under such circumstances as to give reasonable grounds to believe the person to have been operating a motor vehicle while in an intoxicated condition, shall be deemed to have given consent to the withdrawal from his body of specimens of his blood, breath, saliva, or urine, and to a chemical test or tests thereof, for the purpose of determining the alcoholic content of his blood, subject to the provisions hereinafter set out. The withdrawal of such body substances, and the test or tests thereof, shall be administered at the written request of a peace officer having reasonable grounds to believe the person to have been operating a motor vehicle upon a public highway of this state while in an intoxicated condition, and only after the peace officer has placed such person under

arrest for the offense of operating a motor vehicle while in an intoxicated condition. If such person requests that a specimen of his blood not be withdrawn, then a specimen of his breath, saliva, or urine shall be withdrawn at the written request of such peace officer; provided, however, that if such person refuses to submit to any chemical testing, no test shall be given, and the provisions of section 321B.7 shall apply. However, if such peace officer fails to provide such test within two hours after such arrest, no test shall be required, and there shall be no revocation under the provisions of section 321B.7."

Section 321B.7 requires revocation of a driver's license upon a proper showing of his refusal to submit to a chemical test.

II. In interpreting a statute we look to the object to be accomplished, the evils sought to be remedied, or the purpose to be subserved and place on it a reasonable or liberal construction which will best serve its purpose rather than one which will defeat it. Severson v. Sueppel, 260 Iowa 1169, 1174, 152 N.W.2d 281, 284 (where we were considering the provisions of chapter 321B); Monroe Com. Sch. Dist. v. Marion Co. Bd., 251 Iowa 992, 998, 103 N.W.2d 746, 749, 750, and citations.

A statute should be given a sensible, practical, workable and logical construction and if fairly possible a construction resulting in unreasonableness as well as absurd consequences will be avoided. Janson v. Fulton, Iowa, 162 N.W.2d 438, 442, 443 (where we were again interpreting the provisions of chapter 321B), and citations.

III. This proceeding to review revocation of a driver's license for refusal to submit to a chemical test is a civil and administrative proceeding. It is separate and distinct from a criminal action on a charge of driving while intoxicated. Each action proceeds independently of the other.

Severson v. Sueppel, supra, 260 Iowa 1169, 1176, 152 N.W.2d 281, 285; Gottschalk v. Sueppel, 258 Iowa 1173, 1179, 140 N.W.2d 866, 870, and cited authorities in each. See also Blow v. Commissioner of Motor Vehicle, S.D., 164 N.W.2d 351, 352; Ziemba v. Johns, 183 Neb. 644, 163 N.W.2d 780, 781; Marbut v. Motor Vehicle Dept. of Highway Comm'n, 194 Kan. 620, 400 P.2d 982, 984.

■ We are in no way here concerned with any prosecution of plaintiff on a charge of driving while intoxicated. Some of plaintiff's brief is devoted to constitutional rights involved in a criminal prosecution which have no application to this civil or administrative hearing. As we point out in Gottschalk v. Sueppel, supra, the constitutional requirements that in all criminal prosecutions the accused shall have assistance of counsel are not applicable to administrative proceedings resulting in revocation of a driver's license under the Implied Consent Law.

IV. The real difference between the parties concerns the meaning of the last sentence of section 321B.3, "However, *if such peace officer fails to provide such test within two hours after such arrest,* no test shall be required, and there shall be no revocation under the provisions of section 321B.7". (Emphasis supplied) It is the commissioner's contention the two-hour limitation applies only to a period when a test must be offered and that once the proper procedure has been followed and a refusal is made the officer is not required to wait until a two-hour period following arrest expires. Plaintiff contends he had a right to withdraw his refusal at any time before the expiration of the two-hour period and demand a blood test although the blood would be withdrawn after expiration of that period. As applied to this civil or administrative proceeding we are unable to agree with plaintiff's contention in this regard which the trial court adopted.

We have not heretofore considered the question now presented and there is little

case law on the subject. See however the annotation 88 A.L.R.2d 1064, where at page 1074, section 7, "What constitutes 'refusal'", the editor cites several cases from the N.Y.S.2d reports.

In Neet v. Hults, 26 A.D.2d 970, 274 N.Y.S.2d 913, 915, plaintiff was arrested for driving while intoxicated and soon thereafter refused to take a blood test. 75 minutes after his arrest plaintiff through his father asked he be given such a test. In approving the driver license revocation the court said: "Petitioner seeks annulment on the ground that his alleged willingness to take the test some considerable time after his initial refusal and within the two-hour period vitiated the legal effect otherwise to be given his refusal. As appears from the above quotation thereof, the two-hour limitation is to qualify the results of the test for admission in evidence and not necessarily to confer additional privilege upon the defendant or to extend his rights in point of time. (Cf. Matter of Sowa v. Hults, 22 A.D.2d 730, 731, 253 N.Y.S.2d 294, 295); * * *." This quote is cited with approval in Sweeney v. Tofany, 56 Misc.2d 291, 288 N.Y.S.2d 649, 651. The court there states: "From these holdings we infer that a defendant's license must be revoked if his subsequent consent is not given in time for the test to be taken within two hours, but, with the two hours not being a matter of right to the defendant, his license may be revoked despite a subsequent consent short of that time."

■ It is obvious the purpose of the Implied Consent Law is to reduce the holocaust on our highways part of which is due to the driver who imbibes too freely of intoxicating liquor. Severson v. Sueppel, supra. The civil license revocation provided for under the Implied Consent Act was intended to protect the public from the irresponsible driver and not merely to punish the licensee. Ziemba v. Johns, supra, 183 Neb. 644, 163 N.W.2d 780, 782.

Here patrolman Kephart was the only peace officer having reasonable grounds

to believe plaintiff had operated a motor vehicle on a public highway while intoxicated and was the arresting officer as referred to in section 321B.3. It was his duty to request plaintiff to submit to a chemical test. He performed his duty in this regard and prepared his report for the commissioner after plaintiff had refused to take a test. To hold he was required to consider the refusal only conditional or subject to withdrawal during the two-hour period after arrest would require the patrolman to remain with or near the arrested person. This would mean when a patrolman makes such an arrest he would practically be out of service for two hours.

■ Section 321B.3, after stating the basis for a request by a peace officer to the arrested driver for a chemical test, states: "* * * if such person refuses to submit to any chemical testing, no test shall be given, * * *." Plaintiff had refused. He was not entitled in this administrative proceeding to defeat revocation of his driving privilege by showing he thereafter changed his mind.

Plaintiff's interpretation of section 321B.3 would lead to unreasonable, absurd consequences and would practically defeat the purpose thereof.

The order of the trial court is reversed and the cause remanded with directions to reinstate the commissioner's order revoking plaintiff's driver's license.

Reversed and remanded.

All Justices concur.

BECKER, Justice.

I adhere to the dissents noted in Gottschalk v. Sueppel, 258 Iowa 1173, 140 N.W. 2d 866 and Severson v. Sueppel, 260 Iowa 1169, 152 N.W.2d 281. Since the constitutionality of the statute involved has been decided, I concur.