**Philip Charles HOFFMAN, Appellee,**

v.

**The IOWA DEPARTMENT OF TRANSPORTATION, Appellant.**

**No. 2–58992.**

Supreme Court of Iowa.

Aug. 31, 1977.

Richard C. Turner, Atty. Gen., and John G. Mullen, Asst. Atty. Gen., for appellant.

Gary D. Ordway, of Patterson, Lorentzen, Duffield, Timmons, Irish & Becker, Des Moines, for appellee.

HARRIS, Justice.

In this proceeding under the administrative procedure act the trial court reversed an administrative order which had revoked petitioner's driving privileges under the implied consent law, chapter 321B, The Code. We reverse the trial court and order reinstatement of the revocation.

Philip Charles Hoffman (petitioner), while driving his pickup truck at 12:50 a. m. July 26, 1975, was stopped by Officer Clifford Boley (Boley) of the Johnston, Iowa police department. After conducting field sobriety tests Boley arrested petitioner for operating a motor vehicle while under the influence of an intoxicating beverage in violation of § 321.281, The Code.

At the time of arrest Boley took possession of defendant's key chain which contained the ignition key to the truck. The same key chain also contained keys to petitioner's home and garage, a lock box in the truck containing petitioner's carpenter tools, a savings box stored in petitioner's home, and several other keys. Boley handed the entire key chain to a tow truck driver who came to tow away petitioner's truck.

Boley took petitioner under arrest to the Johnston police department where they arrived at 1:00 a. m. Petitioner stated he wished to speak to his attorney. Boley advised petitioner he had no right to an attorney during the implied consent proceeding. This request by petitioner and reply by Boley were repeated several times.

Boley invoked the implied consent procedure requesting a blood test at 1:14 a. m. and a urine test at 1:15 a. m. Defendant stated he would not take any test or make any statement until he had consulted his attorney. Thereafter, at approximately 1:20 a. m. petitioner was permitted to and did call his attorney. Both the attorney and petitioner then requested a blood test but Boley refused, stating he had already been through the implied consent procedure and was not obligated to repeat it.

In accordance with the implied consent law petitioner's motor vehicle operator's license was revoked for 120 days. Thereafter petitioner requested and was granted a hearing before a hearing officer of the department of transportation who upheld the revocation. Petition for review was then sought in Polk district court where the revocation was reversed.

The trial court determined our decision in *Swenumson v. Iowa Department of Public*

*Safety*, 210 N.W.2d 660 (Iowa 1973) permits trial courts to examine the factual circumstances in any given case to determine whether " * * * the citizen was confused or was stalling for time so the physiological processes would lower his blood count." The trial court determined petitioner believed he had a right to counsel and that Boley lost his credibility to correct the confusion by unreasonable conduct in seizing all of the petitioner's keys. The trial court concluded Boley's conduct caused petitioner to disbelieve him and to remain confused as to his right to counsel.

I. The trial court proceeding was conducted on the basis of the procedure existing prior to the advent of the Iowa administrative procedure act, chapter 17A, The Code. Those procedures were explained in a number of cases including *Crosser v. Iowa Dept. of Public Safety*, 240 N.W.2d 682, 684 (Iowa 1976) and *Carroll v. Iowa Dept. of Pub. Saf., etc.*, 231 N.W.2d 19, 21 (Iowa 1975). Accordingly the trial court took evidence of various witnesses and tried the matter anew as a basis for its findings and conclusions.

The Iowa administrative procedure act became effective July 1, 1975. Section 321B.9 now provides: "Judicial review of the actions of the director may be sought in accordance with the terms of the Iowa administrative procedure Act. * * *."

Turning to the administrative procedure act we note § 17A.19, The Code, provides in material part:

"Except as expressly provided otherwise by another statute referring to this chapter by name, the judicial review provisions of this chapter shall be the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of such agency action. * * *.

" * * *.

"7. In proceedings for judicial review of agency action a court may hear and consider such evidence as it deems appropriate. In proceedings for judicial review of agency action in a contested case, however, *a court*

*shall not itself hear any further evidence with respect to those issues of fact whose determination was entrusted by Constitution or statute to the agency* in that contested case proceeding. Before the date set for hearing a petition for judicial review of agency action in a contested case, application may be made to the court for leave to present evidence in addition to that found in the record of the case. If it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the contested case proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. The agency may modify its findings and decision in the case by reason of the additional evidence and shall file that evidence and any modifications, new findings, or decisions with the reviewing court and mail copies of the new findings or decisions to all parties.

"8. The court may affirm the agency action or remand to the agency for further proceedings. The court shall reverse, modify, or grant any other appropriate relief from the agency action, equitable or legal and including declaratory relief, if substantial rights of the petitioner have been prejudiced because the agency action is:

"a. In violation of constitutional or statutory provisions;

"b. In excess of the statutory authority of the agency;

"c. In violation of an agency rule;

"d. Made upon unlawful procedure;

"e. Affected by other error of law;

"f. In a contested case, unsupported by substantial evidence in the record made before the agency when that record is viewed as a whole; or

"g. Unreasonable, arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion."

█ This is a "contested case" as defined by § 17A.2(2), The Code. No application

was made to the trial court for leave to present evidence in addition to that appearing in the record before the hearing officer. Accordingly the record for review should have been limited to matters shown before the hearing officer. See *Iowa Movers & Warehousemen's Ass'n v. Briggs,* 237 N.W.2d 759, 770 (Iowa 1976).

█ An appeal from the determination of the district court is allowed under § 17A.20. Our review in a contested case under § 17A.20 is not de novo. Our task is to review the record in the manner specified in § 17A.19(7) and make anew the judicial determinations specified in § 17A.19(8). Our review is limited, as the district court's review should have been, to the record made before the hearing officer.

The sole question, then, for our determination is whether the record before the hearing officer shows petitioner did not legally refuse to submit to chemical testing. It is clear Boley followed the implied consent procedure in requesting body fluid specimens. Boley read to defendant at least twice from a form used by the Johnston police department. The form advised him of the consequences for refusal to submit and requested the body fluid specimens. In addition Boley told petitioner at least twice he had no right to counsel during the implied consent proceedings and also explained the consequences of refusing.

█ Petitioner does not actually contend Boley failed to comply with the implied consent procedures. Rather he argues the circumstances of the case reveal he did not legally refuse to submit to chemical testing. Petitioner would not submit the specimen before being given an opportunity to visit with his attorney. He believes this qualified refusal was justified under the circumstances. He relies heavily on the contention Boley took his entire key chain and wrongfully claimed a right to the keys. Petitioner now claims this episode caused him not to trust or believe Boley. From this petitioner argues it was reasonable for him not to believe Boley's statement petitioner had no right to counsel during the implied consent proceeding. Petitioner con-

tends Boley therefore caused the confusion which led him to believe he had a right to counsel before submitting or refusing to submit to chemical testing. Defendant contends his qualified refusal cannot be deemed a refusal as contemplated by § 321B.3 and § 321B.7, The Code. Petitioner believes his contentions are supported by the fact that immediately after visiting with his attorney he requested he be given the chemical tests.

In *Swenumson*, supra, 210 N.W.2d at 663 we expressed concern for confusion which might result if a driver was advised of his right to counsel as a part of the *Miranda* warnings but was left unadvised his *Miranda* right to counsel was inapplicable to the implied consent proceeding. We have no such problem in the instant case. Petitioner was not given the *Miranda* warning until after the implied consent proceeding. In addition, as hereinbefore noted, petitioner was advised he had no right to counsel during the implied consent proceeding.

The district court agreed with petitioner's contention Boley's taking of all his keys caused a credibility gap which reasonably caused petitioner not to believe Boley.

It is unnecessary to speculate over the merits of petitioner's contention he was confused by Boley's taking of the keys. There was no evidence offered before the hearing officer about the keys. Petitioner merely testified of his request to visit with counsel and the officer's statement he could do so after the implied consent procedure was completed. Boley was the only other witness to testify before the hearing officer. He did not mention the keys. Petitioner's theory accordingly lacks a factual foundation.

■■■ We believe it is clear petitioner refused the test in the statutory sense by stating he would not take a test until he visited with his attorney. Such a qualified response is a refusal under chapter 321B. *Swenumson*, supra, 210 N.W.2d at 662–663. See also *State v. Richards*, 229 N.W.2d 229, 234 (Iowa 1975); *Morgan v. Iowa Department of Public Safety*, 227 N.W.2d 155, 157 (Iowa 1975). Petitioner also attached con-

siderable importance to Boley's refusal to give the chemical test after petitioner visited with his attorney. Petitioner believes this betrayed a bad attitude by the officer. We can draw no such conclusion. Boley was on sound legal ground in refusing to give the test after the refusal. One refusal is determinative. *Morgan*, supra, 227 N.W.2d at 157; *Swenumson*, supra, 210 N.W.2d at 662–663; *Krueger v. Fulton*, 169 N.W.2d 875, 878–879 (Iowa 1969). The fact Boley saw to it petitioner could visit with his attorney within minutes of the refusal shows an awareness of petitioner's rights and discloses those rights were respected.

The judgment of the trial court is reversed and the order of revocation by the department of transportation is reinstated.

REVERSED.

All Justices concur, except MASON and RAWLINGS, JJ., who concur specially.

MASON, Justice (concurring specially).

In concur specially in the court's opinion because I wish to discuss an issue which I believe is inherent in the case before us. The problem arises from the advice given petitioner by the arresting officer that he was not entitled to consult with an attorney before consenting to or refusing withdrawal of a body specimen. This matter was not dealt with in the court's opinion since it was not effectively and properly raised for consideration on appeal.

The following portion of the factual recitation set forth in the majority opinion is pertinent:

"Boley took petitioner under arrest to the Johnston police department where they arrived at 1:00 a. m. Petitioner stated he wished to speak to his attorney. Boley advised petitioner he had no right to an attorney during the implied consent proceeding. This request by petitioner and reply by Boley were repeated several times.

"Boley invoked the implied consent procedure requesting a blood test at 1:14 a. m. and a urine test at 1:15 a. m. Defendant stated he would not take any test or make

any statement until he had consulted his attorney. Thereafter, at approximately 1:20 a. m. petitioner was permitted to and did call his attorney. Both the attorney and petitioner then requested a blood test but Boley refused, stating he had already been through the implied consent procedure and was not obligated to repeat it."

I am aware of this court's pronouncement in *Swenumson v. Iowa Department of Public Safety*, 210 N.W.2d 660, 662 (Iowa 1973), to the effect:

" * * * It is well established that the state and federal constitutional right to counsel does not apply to an implied consent proceeding. *Gottschalk v. Sueppel*, 258 Iowa 1173, 1179, 140 N.W.2d 866, 869 (1966) * * *."

The rationale for this position is that the constitutional guarantees only apply to "criminal" proceedings and not to an administrative proceeding like the implied consent procedures.

I concede that the foregoing pronouncement from *Swenumson* is a correct statement of the law in this state. However, I believe Boley's advice to the petitioner was too broad, particularly in view of section 755.17, The Code, which provides:

"Any peace officer or other person having custody of any person arrested or restrained of his liberty for any reason whatever, shall, * * *, except in cases of imminent danger of escape, permit that person, without unnecessary delay after arrival at the place of detention, to call, consult, and see a member of his or her family or an attorney of his or her choice. * * * If the person arrested or restrained is intoxicated, or a person under eighteen years of age, the call shall be made by the person having custody. An attorney shall be permitted to see and consult the person arrested or restrained alone and in private at the jail or other place of custody. * * * A violation of this section shall constitute a misdemeanor."

Section 755.17, in substantially unchanged form, is included in the revised criminal code. Chapter 2, section 421.

This court interpreted the provisions of section 755.17 as follows in *State v. Tornquist*, 254 Iowa 1135, 1149, 120 N.W.2d 483, 492:

"IV. Section 755.17, Code of 1962, makes it *mandatory* that any peace officer or other person having custody of any person restrained of his liberty for any reason shall, * * *, permit the person so detained, without unnecessary delay after arrival at the place of detention, to call, consult and see a member of his family or an attorney of his choice. * * *." (Emphasis supplied).

Recently, the Minnesota Supreme Court in *Prideaux v. State Dept. of Public Safety*, 247 N.W.2d 385, 388–389 (Minn.1976), faced the question whether an individual in the same predicament as petitioner had a right to consult with counsel prior to deciding whether to submit to a body substance testing procedure. With respect to the constitutional argument advanced therein, the court stated:

" * * * With virtual unanimity, state courts outside Minnesota have denied such a right. [authorities cited in n. 3] The bases of all these holdings, * * *, have been that driver's license revocation is a civil proceeding and, as a corollary, that the taking of a chemical test is not a 'critical stage' in a criminal prosecution. [authorities cited in n. 4] Upon reflection, we have some doubt as to the continuing vitality of these cases.

"While driver's license revocation proceedings have been labeled 'civil' in nature, * * *, we do not view the 'civil' label as dispositive in view of the important constitutional rights which may be involved. First, driver's license revocation for failure to submit to chemical testing is necessarily and inextricably intertwined with an undeniably criminal proceeding—namely, prosecution for driving while under the influence of an alcoholic beverage. The severe penalty for an unreasonable refusal to permit testing, i. e., mandatory 6-month revocation of a driver's license, may in many cases impose a greater burden on the driver than conviction of the crime of driving under the

influence. The obvious and intended effect of the implied-consent law is to coerce the driver suspected of driving under the influence into 'consenting' to chemical testing, thereby allowing scientific evidence of his blood-alcohol content to be used against him in a subsequent prosecution for that offense. * * * [citing authority]. The license revocation proceeding thus becomes an arm of the prosecutor in his attempt to gather evidence against the accused for use in criminal prosecution. Moreover, it is used as a means of obtaining evidence *at the time of arrest or detention for suspicion of driving under the influence.* Only *after* the driver makes his decision regarding the test does the proceeding divide clearly into its civil and criminal aspects—civil, if testing is refused; criminal, if testing is consented to; or both, if testing is refused, but the prosecutor nonetheless has sufficient evidence to obtain a conviction and elects to do so. Under these circumstances, we cannot see why evidence gathering for prosecution for driving under the influence using implied-consent procedures is any less subject to constitutional scrutiny than other evidence-gathering procedures such as searches, use of informers, or custodial interrogation.

"Second, revocation of a driver's license for 6 months may have an impact on the ordinary driver at least as devastating as the traditional criminal sanctions of a fine and imprisonment. A driver's license is no longer a luxury or mere privilege to most citizens, but a prerequisite to earning a livelihood. * * * We cannot allow a 'civil' label to obscure the quasi-criminal consequences of revocation to the ordinary citizen.

"Third, the decision whether to take or refuse chemical testing is arguably a 'critical stage' in the driving-under-the-influence proceeding. * * * [Lengthy analysis utilizing *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149]." (Emphasis in original).

Following its constitutional analysis, the *Prideaux* court determined it was not necessary to resolve the issues on constitutional grounds and reversed the license revocation in issue on the basis of a statute, unrelated to the implied consent procedure, which facilitated communications between a defendant and his attorney. After pointing out other cases where it was determined an individual subject to implied consent testing procedures was afforded a limited right to consult with counsel, *Siegwald v. Curry*, 40 Ohio App.2d 313, 69 Ohio Op.2d 293, 319 N.E.2d 381 and *Gooch v. Spradling*, 523 S.W.2d 861 (Mo.App.1975), the court, 247 N.W.2d at 394, held as follows:

"We have referred above to a *limited* right to counsel. Because of the importance of uniformity and clarity in implied-consent procedures, we would indicate specifically the nature of the right and its limitations. Consistent with this opinion, any person who is required to decide whether he will submit to a chemical test * * shall have the right to consult with a lawyer of his own choosing before making that decision, provided that such a consultation does not unreasonably delay the administration of the test. The person must be informed of this right, and police officers must assist in its vindication. The right to counsel will be considered vindicated if the person is provided with a telephone prior to testing and given a reasonable time to contact and talk with counsel. If counsel cannot be contacted within a reasonable time, the person may be required to make a decision regarding testing in the absence of counsel. The above procedure will ensure an adequate opportunity to consult with counsel without in any substantial way delaying the administration of the test." (Emphasis in original).

As noted, the *Prideaux* opinion was based upon a statute facilitating a detained person's access to counsel. The statutory analysis is especially compelling in light of the fact section 755.17, The Code, 1977, is substantially identical to the statutory provisions relied upon by the *Prideaux* court.

Minn.St. 481.10 is set out in *Prideaux*, 247 N.W.2d at 391. It provides:

"All officers or persons having in their custody a person restrained of his liberty

upon any charge or cause alleged, except in cases where imminent danger of escape exists, shall admit any resident attorney retained by or in behalf of the person restrained, or whom he may desire to consult, to a private interview at the place of custody. Such custodians, upon request of the person restrained, as soon as practicable, and before other proceedings shall be had, shall notify any attorney residing in the county of the request for a consultation with him. Every officer or person who shall violate any provision of this section shall be guilty of a misdemeanor and, in addition to the punishment prescribed therefor shall forfeit $100 to the person aggrieved, to be recovered in a civil action."

Although there is no constitutional right to the assistance of counsel at an implied consent proceeding, it is my view section 755.17 confers on a person required to decide whether he will submit to a chemical test a right to consult with an attorney of his own choosing before making that decision, provided such a consultation does not unreasonably delay the administration of the test. A state is within its rights in granting a person greater rights under a statute than may be required by either the state or federal constitution.

In my opinion Officer Boley was wrong in the advice he gave petitioner; peace officers in this state should comply with the requirements of section 755.17 in connection with an implied consent proceeding; and that failure to do so might affect the admissibility of evidence bearing on such test.

RAWLINGS, J., joins in this special concurrence.