STENSLAND, Appellant v. SMITH, Respondent

(116 N.W.2d 653)

(File No. 9960. Opinion filed September 4, 1962)

**Anderson & Weisensee,** Sioux Falls, for Plaintiff and Appellant.

**A. C. Miller,** Atty. Gen., by **Gerald L. Reade,** Asst. Atty. Gen., Pierre, for Defendant and Respondent.

HANSON, J. Trig Stensland was arrested May 5, 1961 in the City of Sioux Falls for operating a motor vehicle while intoxicated. His driver's license was thereafter revoked for a period of one year by the South Dakota Commissioner of Motor Vehicles for refusing to take a chemical test to determine the amount of alcohol in his blood in accordance with our so-called Implied Consent Law, SDC 1960 Supp. 44.0302-2. Stensland petitioned the Circuit

Court of Minnehaha County for a trial de novo to determine whether his license to drive was subject to revocation by the Commissioner of Motor Vehicles. The trial court concluded the Commissioner was justified in revoking Stensland's license to drive and entered an order dismissing his petition. Petitioner appeals contending that an arrested motorist has the right to choose the type of chemical test to be administered under our Implied Consent Law.

The pertinent portions of SDC 1960 Supp. 44.0302-2 provide as follows:

> "Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in SDC 1960 Supp. 44.0302-1, provided that such test is administered at the direction of a police officer having reasonable grounds to believe such person to have been driving under the influence of alcoholic liquor and that such person has been charged with a traffic violation. Such person shall be requested by said officer to submit to such analysis and shall be advised by said officer of his right to refuse to submit to such analysis and the applicable provisions of this section in the event of such refusal with respect to the revocation of such person's driving permit. If such person, after request and explanation as hereinbefore provided, shall refuse to submit to such chemical analysis, then such test shall not be given * * *.

> "Upon the request of the person who was tested, the results of such analysis shall be made available to him.

> "Only a physician, laboratory technician, or medical technician or medical technologist acting at the request of a law enforcement officer can withdraw blood for the purpose of determining the al-

coholic content therein. This limitation shall not apply to the taking of a urine, breath or other bodily substance specimen.

"The person tested shall be permitted to have a physician, laboratory technician, or medical technician or medical technologist of his own choosing administer the chemical analysis in addition to the one administered at the direction of the law enforcement officer."

Similarly worded statutes have recently been construed by two courts with differing results. In Ringwood v. State, 8 Utah 2d 287, 333 P.2d 943, the Utah court held that a driver has the right to select the test which is least burdensome or offensive to him. According to the Utah statute, U.C.A. 1953, 41-6-44.10, a driver is deemed to give his consent to a chemical test of "his breath, blood, urine or saliva". The court held that the disjunctive word "or" applied to the whole series of words in the statute "Therefore the ordinary and usual meaning of the language would be that the subject is deemed to give his consent to a test of some one of the designated substances, or of another, but not all of them. That is, of his breath, or of his blood, or of his urine, or of his saliva." See also Bean v. State, 12 Utah 2d 76, 362 P.2d 750. On the other hand, in Lee v. State, 187 Kan. 566, 358 P.2d 765, the Kansas court held that a driver does not have a choice of tests when requested by law enforcement officers to submit to a chemical test of his breath, blood, urine, or saliva. The court stressed the fact that "The test shall be administered at the direction of the arresting officer" and further said "It is common knowledge that few areas in the state have the technical equipment and facilities to administer all of the tests. * * * The statute does not compel one in plaintff's position to submit to a blood test, * * *. It gives the driver the right of choice of the statutory suspension of his license, and further gives him the right to a hearing on the question of the reasonableness of his failure to submit to the test."

■ Under our law a driver is likewise deemed to have given his consent "to a chemical analysis of his blood, urine, breath, or other bodily substance". Our statute speaks in the singular with reference to "a chemical analysis", "such test", and "such chemical analysis". In this respect the language of our statute differs from the text of the Uniform Chemical Test For Intoxication Act wherein a driver is deemed to have given consent "to a chemical test, or tests, of his blood, breath, saliva, or urine". 1957 Handbook of the National Conference of Commissioners on Uniform State Laws, p. 220. The North Dakota statute follows the language of the Uniform Act which was interpreted by the North Dakota court in the case of Timm v. State, N.D., 110 N.W. 2d 359, to mean that a motorist in that state consents to all four of the tests mentioned in their statute. Our statute is obviously more restrictive. It does not contain the alternative plural words "or tests". Accordingly, it seems clearly evident that a motorist in this state impliedly consents to only one of the tests mentioned in our law.

■ The test given any driver must be "administered at the direction of a police officer". In our opinion, authority to administer the test to be given implies authority to select such test. All the starch would be taken out of the law if arrested drivers could pick and choose the type of test to be taken. As the Kansas court pointed out in Lee v. State, 187 Kan. 566, 358 P.2d 765, few communities have the technical equipment and trained personnel available to administer all of the different chemical tests mentioned in the act. By choosing a test not available in the area of arrest a driver could easily and effectively circumvent the law. Such a built-in escape hatch was never intended by our legislature.

Affirmed.

All the Judges concur.