**DEPARTMENT OF PUBLIC SAFETY, State of South Dakota, Plaintiff, Respondent and Appellant.**

v.

**John Thomas GATES, Defendant, Petitioner and Appellee.**

**Nos. 14326, 14334.**

Supreme Court of South Dakota.

Considered on Briefs March 22, 1984.

Decided June 13, 1984.

Jeffrey P. Hallem, Asst. Atty. Gen., Pierre, for plaintiff, respondent and appellant; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Jeffrey T. Sveen, Aberdeen, for defendant, petitioner and appellee.

FOSHEIM, Chief Justice.

The circuit court reversed the South Dakota Department of Public Safety's (Department) revocation of John Thomas Gates' (Gates) driver's license. The Department appeals and Gates filed a notice of review. We affirm in part and reverse in part.

At approximately 10:45 p.m., on October 24, 1981, a state highway patrolman observed a vehicle driven by Gates drifting back and forth within the lanes of traffic on Sixth Avenue in Aberdeen. The officer followed the vehicle for approximately fifteen blocks during which time it went through several controlled intersections without violating traffic signals. Nevertheless, it weaved across the center line of the roadway at least three times. The officer stopped the automobile. Gates exited and approached the patrol car in a cautious and uneasy manner, placing a hand on his car. The officer noticed an odor of alcohol on his breath.

Gates was asked to perform eight field sobriety tests. The state trooper first described each test and then observed Gates' performance. Gates was only able to recite the alphabet from A through N before stopping. He did not make a second attempt. He was able to count backwards from 1982–1971 correctly. He succeeded in one of three attempts at the finger dexterity or finger count maneuver. He did not walk heel-to-toe as requested and had problems with balance while standing on one foot. Gates was unable to touch the tip of his nose with the tip of his finger, even after repeated attempts. He swayed during the Rhomberg test.

The officer then requested Gates to take a preliminary breath test (PBT). He was informed of the purpose of the PBT and that he did not have to take the test. Gates was told the test results would be used as evidence in court should it be needed. The officer further explained that the test did not replace any other tests that may be requested. Gates initially refused to take the PBT.

The officer placed Gates under arrest for violating SDCL 32–23–1. The accused inquired whether he could be arrested without having submitted to the PBT. After the officer assured him that the arrest could take place, Gates requested, took, and failed the PBT.

The *Miranda* warnings and implied consent law were then read to Gates and he was requested to submit to a blood test. Gates claimed he had already taken a test. The trooper explained that the preliminary breath test was strictly a field sobriety test and did not replace the implied consent test. Gates stated he wanted to talk to an attorney before giving an answer. He persisted with this answer to the officer's repeated requests to take the blood test. Gates finally gave a definite refusal to submit to the blood test. He was then allowed to call an attorney, after which he requested, and was refused, the blood test.

■ The arresting officer sent notice of the refusal to the Department. The Department, in accordance with SDCL 32–23–11 and SDCL ch. 1–26, issued notice of intent to revoke Gates' driver's license. After an administrative hearing the Department revoked the license. This court has repeatedly held there is no constitutionally guaranteed right to consult an attorney prior to taking the blood test. *State v. Braunesreither*, 276 N.W.2d 139 (S.D. 1979); *Peterson v. State*, 261 N.W.2d 405 (S.D.1977); *Blow v. Commissioner of Motor Vehicles*, 83 S.D. 628, 164 N.W.2d 351 (1969). We have further held that a request for counsel can be interpreted as a constructive refusal. *Peterson*, 261 N.W.2d 405. The trial court, however, reversed the department and restored Gates' driving privileges, holding that our position was overturned by the federal district court decision of *Heles v. State of South Dakota*, 530 F.Supp. 646 (D.S.D.1982). In *Heles*, the federal district court, held that the right to consult an attorney does exist prior to the blood test. The Eighth Circuit, however, vacated *Heles* and directed the federal district court to dismiss the complaint as moot due to the death of the plaintiff. *Heles v. State of S.D.*, 682 F.2d 201 (8th Cir.1982).

■ The trial court nevertheless incorrectly concluded that the *Heles* decision is binding on our state courts. The *Heles* judgment, having been vacated, is not precedent even in the federal court in which it was decided. We therefore need not decide whether this judgment, if not vacated, would bind our state courts. *State v. Miller*, 248 N.W.2d 56 (S.D.1976); *see Leeper v. Texas*, 139 U.S. 462, 11 S.Ct. 577, 35 L.Ed. 225 (1891); *State v. Dwyer*, 332 So.2d 333 (Fla.1976); 20 Am.Jur.2d Courts §§ 226, 230 (1965).

■ Upon notice of review Gates argues that the trial court erred in determining that he did not comply with SDCL 32–23–10 by submitting to the blood test. At the time of his arrest SDCL 32–23–10 provided:

Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32–23–7, provided that such test is administered at the direction of a law enforcement officer having lawfully arrested such person for a violation of § 32–23–1....

Gates argues that the PBT is a "chemical analysis of ... breath" and therefore satisfies SDCL 32–23–10. He then concludes that the officer had no power to request a blood test of him after he took the PBT. He cites as authority *Stensland v. Smith*, 79 S.D. 651, 654, 116 N.W.2d 653, 654 (1962), in which we said: "it seems clearly evident that a motorist in this state impliedly consents to only one of the tests mentioned in our law." That case was decided, however, before enactment of SDCL 32–23–1.2 which reads:

Every person operating a motor vehicle which has been involved in an accident or which is operated in violation of any of the provisions of this chapter shall, at the request of a law enforcement officer, submit to a breath test to be administered by such officer. If such test indicates that such operator has consumed alcohol, the law enforcement officer may require such operator to submit to a chemical test in the manner set forth in this chapter.

Clearly, the preliminary breath test is permitted by law and may be required in addition to a chemical test pursuant to SDCL 32–23–10. A fair reading of both statutes permits this multiple testing.*

■ Gates' other notice of review issues charge that the officer lacked reasonable suspicion to stop him and there was insufficient probable cause to arrest him. Both

---

* *Stensland* can still remain good law concerning multiple testing occurring under SDCL 32–23–10. Our statute speaks in the singular with reference to "a chemical analysis," "such test," and "such chemical analysis." This means that after the preliminary breath test permitted by SDCL 32–23–1.2 is given, only one chemical analysis is permitted under SDCL 32–23–10.

arguments fail. Gates swerved three times over the center line within fifteen blocks. After being stopped, Gates was unable to complete several field sobriety tests successfully.

We reverse on the issue raised by the Department. We affirm the issues raised on notice of review.

All the Justices concur.