#28994, #29001-a-MES
**2020 S.D. 16**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STEPHANIE BONEBRIGHT,                                  Claimant and Appellee,

    v.

CITY OF MILLER and SDML
WORKERS' COMPENSATION FUND,                  Employer, Provider
                                                                              and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICIA J. DEVANEY
Judge

* * * *

LEE SCHOENBECK
JOSEPH ERICKSON of
Schoenbeck Law, P.C.
Watertown, South Dakota                          Attorneys for claimant and
                                                                   appellee.


LAURA K. HENSLEY of
Boyce Law Firm, LLP
Sioux Falls, South Dakota                          Attorneys for employer,
                                                                   provider and appellants.

* * * *

CONSIDERED ON BRIEFS
FEBRUARY 12, 2020
OPINION FILED **03/18/20**

SALTER, Justice

[¶1.]        James Bonebright died from injuries he sustained in a work-related accident while he was employed with the City of Miller.  The City and the South Dakota Municipal League Workers' Compensation Fund denied workers' compensation liability, claiming that Bonebright had engaged in willful misconduct.  The Department of Labor agreed, although it awarded benefits to Bonebright's widow after concluding his alleged willful misconduct was not a proximate cause of his death.  The circuit court affirmed the Department's decision to award benefits, but did so because it determined that Bonebright had not engaged in willful misconduct.  We affirm.

## Background

[¶2.]        James Bonebright began his employment with the City of Miller (the City) in 1987, working for the water department.  In 2003, he was promoted to superintendent of the water department.  His predecessor, Bill Lewellen, remained with the City and became the superintendent of the electrical department.  Bonebright's position description stated that he "[w]ork[ed] under the general supervision of the city council utility committee and city council."  The organizational structure for the City further indicated that Bonebright, as a department head, reported to the council members, the council vice-president, the council president, and the mayor.

[¶3.]        Bonebright's position description charged him with the responsibility to "[o]versee[] the safety of assigned maintenance workers and equipment operators by instructing individuals in proper safety procedures and monitoring work in

progress." As is relevant to this appeal, the City's safety handbook specifically addressed safety rules and procedures for working in an excavated trench and required workers to "always ensure that the proper shoring system is in place before anyone enters the excavation." Although Bonebright previously acknowledged the existence of the safety handbook, there was conflicting testimony as to whether all employees and city council members were aware of the safety handbook.[1]

[¶4.] In any event, the City's safety rules require its employees to secure a trench deeper than 48 inches either by using the City's trench box[2] or through a process of sloping[3] the sides of the trench. The City purchased its trench box in the late 1990s at Bonebright's request after a previous trench collapse during which he and another employee narrowly averted injury. However, several employees testified that they used the trench box only once in the succeeding years. Instead, their practice had been to slope the trenches or, sometimes, do nothing to secure the trench. This practice—sloping or doing nothing—occurred during the tenures of both Lewellen and Bonebright as water department superintendent. The City's mayor, Ron Blachford, and Tony Rangel, president of the city council and utilities

---

1.  The City's safety handbook was adopted in 1997.

2.  A trench box is a device with steel sidewalls that can be expanded to the width of a trench and lowered into it to protect workers from cave-ins.

3.  Sloping refers to excavating the sides of the trench out using some type of proportionate ratio relative to the depth of the trench. For instance, one of the City's employees testified that the practice was to slope the trench out one and one-half feet for every foot of depth. The technique is also called benching, shoring, and feathering in the record.

committee member, testified that they were aware of the practice. However, the evidence before the Department established that the City never reprimanded its employees for not following proper trench excavation safety procedures.[4]

[¶5.]        During the week of July 4-8, 2016, Bonebright was working with city employees, including Terry Manning and Lewellen, to install a new underground water main and tap. The project had been contemplated since the late 1990s, but it became necessary in 2016 because the existing system did not allow the City to shut water service off to a non-paying customer without affecting other customers. To accomplish the work, the city employees were replacing sections of pipe that were 13 and 20 feet long in an excavated trench that was approximately seven feet deep.

[¶6.]        On the fateful afternoon of July 8, 2016, Bonebright and his crew were close to completing the project and needed to install one final section of pipe. Bonebright had decided not to use either the trench box or sloping to shore the sides of the trench.[5] Manning expressed concern about the safety of the trench, as did Rangel, who was on hand at the project site. To avoid going into the unsecured trench, Bonebright and Manning decided to use straps to lower the pipe into position. Before they could rig the straps, however, some dirt fell on the pipe, and Bonebright went into the trench to shovel the dirt away. The trench partially

---

4.    The City's employee manual provides that "employee misconduct . . . may result in . . . disciplinary action up to and including immediate discharge."

5.    Several witnesses testified that the trench box had rusted shut, and Bonebright was reluctant to slope the sides of the trench because of nearby underground electrical wires and damage to a wider area of the right of way, which also served as a road. The City's expert later testified that sloping the trench, while more difficult, was still possible.

collapsed, burying Bonebright's legs and knocking him over. Manning jumped in to assist, and the trench collapsed further on top of the two men. After rescue efforts to recover the men from the trench, they were taken by ambulance to a local hospital. Bonebright was then airlifted to a Sioux Falls hospital where he died from his injuries on July 10, 2016.

[¶7.]        Bonebright's widow, Stephanie, requested workers' compensation benefits from the City and its workers' compensation provider, the South Dakota Municipal League Workers' Compensation Fund (the Fund). In response, the City employed Mike Willetts as its expert to investigate the trench collapse. Willetts opined that the trench collapse could have been prevented if "proper excavation guidelines" had been followed, "including but not limited to using protective shoring, sloping or benching methods." Willetts also thought the City's trench box could have been adapted to provide some protection to workers in the trench. Citing Willetts' findings, the City and the Fund denied workers' compensation benefits to Stephanie, asserting that Bonebright had engaged in willful misconduct. *See* SDCL 62-4-37 (providing that "[n]o compensation may be allowed for any injury or death due to the employee's willful misconduct . . .").

[¶8.]        Acting individually and as the personal representative of her husband's estate, Stephanie petitioned the Department of Labor (the Department), for medical and funeral expenses along with indemnity benefits as a surviving spouse. After conducting a hearing, the Department denied the City's willful misconduct defense and awarded Stephanie benefits. Although it concluded that Bonebright had engaged in willful misconduct, the Department determined that the

City had not established that Bonebright's failure to follow safety precautions was a proximate cause of his injury and death.

[¶9.] As it related to the willful misconduct determination, the Department found that "Bonebright's behavior on the day of the trench collapse indicates he understood the potential danger of the unsloped trench." The Department acknowledged evidence that the City had not enforced its safety rule for securing trenches, but it concluded that Bonebright was responsible for enforcing the safety rules. Because Bonebright had decided to leave the trench unsecured in violation of the City's safety rules, the Department reasoned that his later decision to get into the trench constituted willful misconduct.

[¶10.] Despite believing the Department had correctly decided the willful misconduct issue, the City and the Fund appealed to the circuit court, challenging the Department's additional determination that Bonebright's willful misconduct was not a proximate cause of his death. By notice of review, Stephanie contended that the Department erred when it determined that Bonebright had engaged in willful misconduct. The circuit court affirmed the Department's determination that Stephanie was not barred from recovering workers' compensation benefits, but it held that the Department clearly erred when it found that Bonebright engaged in willful misconduct because the City had "habitually disregard[ed] violations of the safety rule." Anticipating the possibility of further review, the court also considered the proximate cause issue and concluded that the City and the Fund had satisfied their burden to prove causation in the event we reversed the determination that Bonebright did not engage in willful misconduct.

[¶11.]    The City and the Fund have appealed the circuit court's decision regarding willful misconduct, and Stephanie has, by notice of review, challenged the court's alternative determination of causation.  We restate the issues as follows:

1.    Whether the circuit court erred when it determined the Department committed clear error by deciding that Bonebright had engaged in willful misconduct.

2.    Whether the circuit court erred when it determined the Department committed clear error by deciding that the City had failed to establish that the safety violations were the proximate cause of Bonebright's injury and death.

## Analysis

[¶12.]    Our review of administrative agency decisions "is well settled and governed by SDCL 1-26-37, which provides in relevant part that on review we 'shall give the same deference to the findings of fact, conclusions of law, and final judgment of the circuit court as given to other appeals from the circuit court.'" *Holscher v. Valley Queen Cheese Factory*, 2006 S.D. 35, ¶ 28, 713 N.W.2d 555, 564 (quoting SDCL 1-26-37).  "However, if the issue is a question of law, the Department's actions are fully reviewable by this Court under the de novo standard." *Id.*

[¶13.]    "When reviewing findings of fact we apply the clearly erroneous standard of review, giving great weight to the agency's findings and inferences drawn on questions of fact." *Id.* ¶ 29.  "However, . . . findings based on deposition testimony and documentary evidence" are reviewed de novo. *Id.* (quoting *Mudlin v. Hills Materials Co.*, 2005 S.D. 64, ¶ 5, 698 N.W.2d 67, 71).

***Willful Misconduct***

[¶14.]        We begin our discussion with the settled principle that South Dakota's statutory workers' compensation system reflects a conscious legislative policy decision to displace traditional negligence concepts for work-related injuries, whether offered as theories of recovery or as defenses.  We explained the general rule and its justification over forty years ago:

> Work[ers'] compensation legislation is based upon the idea that the common law rule of liability for personal injuries incident to the operation of industrial enterprises, based as it is upon the negligence of the employer, with its defenses of contributory negligence, fellow servants' negligence, and assumption of risk, is inapplicable to modern conditions of employment . . . .
>
> The general purposes of work[ers'] compensation legislation, therefore, is the substitution in place of the doubtful contest for a recovery based on proof of the employer's negligence and the absence of the common law defenses of a right for the employees to relief based on the fact of employment, practically automatic and certain, expeditious and independent of proof of fault and for the employers a liability which is limited and determinate.

*Scissons v. City of Rapid City*, 251 N.W.2d 681, 686 (S.D. 1977).

[¶15.]        Consequently, employees may recover statutory benefits for work-related injuries except in limited instances where intentional conduct by an employer or an employee removes the case from the realm of workers' compensation.  For instance, in exceptional cases where an employee is injured by an employer's intentional conduct, the employee is not obligated to accept the exclusive remedy of workers' compensation benefits and may instead pursue a tort claim against the employer.  *See Fryer v. Kranz*, 2000 S.D. 125, ¶ 11, 616 N.W.2d 102, 105-06 (citation omitted) ("Only injuries 'intentionally inflicted by the employer' take the matter outside the exclusivity of workers' compensation

coverage."). More relevant to this case is the somewhat symmetrical idea that intentional misconduct by an employee can preclude the employee's right to recover workers' compensation benefits. *See Holscher*, 2006 S.D. 35, ¶ 44 n.2, 713 N.W.2d at 567-68 n.2 (quoting *Phillips v. John Morrell & Co.*, 484 N.W.2d 527, 532 (S.D. 1992) (Explaining that an employee is barred from recovering workers' compensation benefits when his actions "constitute serious, deliberate, and intentional misconduct.")).

[¶16.]     Aptly designated as the willful misconduct defense, this latter rule allows an employer to avoid workers' compensation liability for an otherwise compensable work-related injury if it can establish the injury was caused by the employee's willful misconduct. *See VanSteenwyk v. Baumgartner Trees & Landscaping*, 2007 S.D. 36, ¶ 12, 731 N.W.2d 214, 219. The statutory basis for the willful misconduct defense is found in SDCL 62-4-37, which provides in relevant part that "[n]o compensation may be allowed for any injury or death due to the employee's willful misconduct, including . . . willful failure or refusal to use a safety appliance furnished by the employer, or to perform a duty required by statute." The text of SDCL 62-4-37 places "[t]he burden of proof under this section . . . on the defendant employer," and we have previously interpreted this provision to mean that the employer must establish both an employee's willful misconduct and "that the injury was incurred 'due to' the employee's willful misconduct." *Holscher*, 2006 S.D. 35, ¶¶ 32, 48, 713 N.W.2d at 565, 567 (quoting *Wells v. Howe Heating & Plumbing, Inc.*, 2004 S.D. 37, ¶ 10, 677 N.W.2d 586, 590).

[¶17.]     "Willful misconduct under the workers' compensation statutory scheme 'contemplates the intentional doing of something with the knowledge that it is likely to result in serious injuries, or with reckless disregard of its probable consequences.'" *Id.* ¶ 48, 713 N.W.2d at 567 (quoting *Fenner v. Trimac Transp., Inc.*, 1996 S.D. 121, ¶ 9, 554 N.W.2d 485, 487-88). We have applied a four-part test to determine whether the employee's violation of safety rules constituted willful misconduct. *Id.* ¶ 49, 713 N.W.2d at 568-69 (citing 2 Larson's Workers' Compensation Law § 35.01). To prevail, an employer must show that:

> (1) the employee [had] actual knowledge of the rule or appliance, and its purpose;
>
> (2) the employee [had] an actual understanding of the danger involved in the violation of the rule or failure to use the appliance;
>
> (3) the rule or use of the appliance must be kept alive by bona fide enforcement by the employer; and
>
> (4) the employee had no valid excuse for violating the rule or failing to use the appliance.

*Id.* (citing 2 Larson's Workers' Compensation Law §§ 35.01-.04).[6]

---

6.    The third edition of Larson's Workers' Compensation applies a similar three-part test, but the parties have not directly asked us to adopt it in this case. *See* 3 Larson's Workers' Compensation Law §§ 35.02-.04. Stephanie has asked that we clarify the fourth part of the *Holscher* test to reflect what she believes to be a more accurate application of Professor Larson's exposition of the employer's willful misconduct defense. In her view, the requirement for an employer to show the employee had no valid excuse for violating a safety rule or failing to use a safety appliance could incorrectly allow the willful misconduct defense in instances where an employee has a plausible, but faulty, reason to explain the violation. However, given our analysis under *Holscher*'s third element, it is unnecessary to consider this argument further.

[¶18.] We applied this test in *Holscher* where we held that the claimant had engaged in willful misconduct by violating a safety rule that prohibited propping open a valve used to dispense acid for cleaning. *Id.* ¶ 54, 713 N.W.2d at 569. The claimant could not, therefore, recover benefits for injuries caused by a resulting acid spill. Central to our determination was the fact that the claimant's employer had actively enforced the safety rule by reprimanding the claimant for an earlier violation and by terminating another employee for violating the rule. *Id.* ¶¶ 10-15, 713 N.W.2d at 560-61. The employer had also emphasized the importance of the rule by hanging signs and restricting access to the room where the acid was stored. *Id.* ¶ 52, 713 N.W.2d at 569.

[¶19.] Here, the Department utilized the four-part test from *Holscher* to determine that Bonebright had engaged in willful misconduct. Through her notice of review to the circuit court, Stephanie argued the Department clearly erred when it determined that the third and fourth parts of the test were met.[7] The circuit court accepted the argument in part and determined that Bonebright had not engaged in willful misconduct because the City had failed to meet the third part of the *Holscher* test by demonstrating that it kept the safety rule alive through bona fide enforcement.

[¶20.] We conclude that the circuit court correctly reversed the Department's willful misconduct finding. The undisputed facts contained in the record demonstrate that the City did not enforce its safety rules for securing trenches,

---

7. The first and second parts of the test are, for the most part, not disputed by the parties. Bonebright's actions demonstrated that he had knowledge of the safety rules and understood the danger posed by an unsecured trench.

either historically or at the time of Bonebright's death. Even though several city council members, the mayor, and the electrical department superintendent, Lewellen, were present at the job site at various times on July 8, no one ordered the project stopped or reprimanded Bonebright for his failure to follow trench excavation safety rules. This, despite the provisions of the City's safety handbook and well-founded concerns regarding the risk posed by the trench.

[¶21.] More illuminating, and in stark contrast to the facts in *Holscher*, is the fact that the City never reprimanded its employees for not using the trench box or sloping the sides of a trench. Testimony contained in the record suggests that the city officials may have been unaware of the safety handbook's existence and did not believe they had the authority to reprimand Bonebright. However, even if this testimony were credited, it does not change or excuse the inarguable fact that the City did not undertake a bona fide effort to enforce the safety rule for securing trenches over 48 inches deep.

[¶22.] The circuit court's decision further rejected the Department's determination that the City could demonstrate bona fide enforcement by delegating enforcement to Bonebright and finding fault with his lack of compliance:

> [T]he Department's decision appears to recognize that the City clearly had not been enforcing the policies in the [s]afety [h]andbook[] given the City official's knowledge of instances where neither a trench box nor sloping were being utilized in excavations. But rather than finding that the City did not keep the safety rule or use of the safety device alive by bona fide enforcement, the Department instead shifted the focus toward *Bonebright's responsibility* to ensure the projects were safe.

[¶23.] We share the circuit court's concern with the Department's reasoning, which we view as coming perilously close to the prohibited concept of contributory

-11-

negligence or fault. Determining whether an employee can be charged with willful misconduct and consequently denied statutory workers' compensation benefits involves a different and more comprehensive inquiry under our *Holscher* analysis, which includes scrutinizing the enforcement of established safety rules. This examination, as our decision here illustrates, is fixed firmly upon the efforts of the employer, not the employee. *See Holscher*, 2006 S.D. 35, ¶¶ 50-52, 713 N.W.2d at 569 (detailing employers' efforts to enforce its safety rules). A different view could introduce a comparative fault element into workers' compensation disputes and effectively allow employers to disclaim liability based solely on the *existence* of safety rules without regard to their efforts to *enforce* them.

## Conclusion

[¶24.] The circuit court did not err when it reversed the Department's determination on bona fide enforcement and proximate cause. Stephanie's workers' compensation claim is not precluded by willful misconduct because the City did not demonstrate bona fide enforcement of its safety rules. Given this disposition, it is unnecessary to address the question of proximate cause. We affirm.

[¶25.] GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, and KONENKAMP, Retired Justice, concur.

[¶26.] KONENKAMP, Retired Justice, sitting for DEVANEY, Justice, disqualified.