#30499-r-PJD
**2024 S.D. 74**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DONALD WILLIAM BLAZER,                          Plaintiff and Appellee,

    v.

SOUTH DAKOTA DEPARTMENT OF
PUBLIC SAFETY,                                           Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
EDMUNDS COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE RICHARD A. SOMMERS
Judge

\* \* \* \*

MARTY J. JACKLEY
Attorney General

JENNA R. SEVERYN
Special Assistant Attorney General
Pierre, South Dakota                         Attorneys for defendant and
                                               appellant.

BRANDON M. TALIAFERRO
Aberdeen, South Dakota                    Attorney for plaintiff and
                                               appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
APRIL 23, 2024
OPINION FILED **12/11/24**

#30499

DEVANEY, Justice

[¶1.] During an investigation of a vehicle accident caused by Donald Blazer, he voluntarily submitted to a preliminary breath test (PBT), but he refused to submit to a blood draw. The South Dakota Department of Public Safety (Department) sent Blazer notice of its intent to disqualify his commercial driver's license (CDL) for life because his refusal to submit to the blood draw constituted a second violation of SDCL 32-12A-36; the first occurred in 2014 when he was convicted of driving under the influence. Blazer requested an administrative hearing, after which the Department affirmed the disqualification of his CDL for life. The circuit court reversed, concluding that Blazer's voluntary submission to the breath test constituted a submission to a chemical analysis such that his refusal to submit to the blood draw could not result in the disqualification of his CDL. The Department appeals. We reverse.

**Factual and Procedural Background**

[¶2.] At approximately 10:00 p.m. on December 28, 2022, Blazer's vehicle crossed the centerline on U.S. Highway 12 and struck another vehicle. He drove away from the scene of the accident, but shortly thereafter law enforcement found his abandoned vehicle approximately a mile away and followed his footprints to his location. They brought Blazer back to his vehicle and placed him in handcuffs. Blazer admitted that he was the driver of the vehicle involved in the accident. While Blazer was talking, South Dakota Highway Patrol Trooper Tyler Woodside detected the odor of alcohol coming from him. When asked if he had been drinking

-1-

alcohol, Blazer admitted to having consumed four beers. Trooper Woodside testified that he thereafter "obtained a PBT from him" and "[t]he result was .102 percent."

[¶3.] Trooper Woodside placed Blazer under arrest and ran a check on his driver's license. He discovered that Blazer held a CDL and testified that as a result, he "read him the implied consent card for a commercial driver's license holder" and asked Blazer to submit to a blood draw. Blazer refused to do so. Trooper Woodside transported Blazer to the local jail and obtained a search warrant to obtain a blood sample. Blazer complied with the blood draw when presented with the warrant.

[¶4.] On January 4, 2023, Blazer was charged by complaint with driving under the influence in violation of SDCL 32-23-1(1) and (2), failure to furnish information regarding an accident in violation of SDCL 32-34-6, and driving on the wrong side of the road in violation of SDCL 32-26-1. The complaint was dismissed without prejudice in February 2023 after the result of the chemical analysis of Blazer's blood revealed a .071 percent blood alcohol content.

[¶5.] On January 5, 2023, the Department sent Blazer a notification of its intent to disqualify Blazer's CDL for life based on his December 28, 2022 refusal to give consent to the blood draw and his 2014 conviction of driving under the influence.[1] Blazer requested an administrative hearing, and at the hearing he was

---

1. Under SDCL 32-12A-37, a person is disqualified from driving a commercial motor vehicle "for life for the commission of two or more violations of any of the subdivisions specified in § 32-12A-36, or any combination of those subdivisions, arising from two or more separate incidents."

   The Department relied on SDCL 32-12A-36(1), which disqualifies a person convicted of driving under the influence, as well as SDCL 32-12A-36(5), which disqualifies a person "[f]or refusing to submit to a chemical analysis for

(continued . . .)

represented by counsel. The Department presented testimony from Trooper Woodside and a Department employee. Blazer testified on his own behalf.

[¶6.] During direct examination, Trooper Woodside testified about his encounter with Blazer consistent with what is related above. He also explained his reason for obtaining a PBT and subsequent blood draw: "The PBT's just to confirm that from my observations of Mr. Blazer he had, in fact, been consuming alcoholic beverages. The blood draw I can send off to the State Health Lab in Pierre, South Dakota. It's a test for the blood alcohol content."

[¶7.] When asked during cross-examination about the type of breathalyzer he used, Trooper Woodside testified that he used "an Intoximeter, the PBT that was issued to [him] by the South Dakota Highway Patrol." He indicated that he is familiar with how the Intoximeter works and answered "Yes" when asked whether he "would agree that the breathalyzer measures blood alcohol content[.]" He also answered "Yes" to the statement that "the way the breathalyzer measures blood alcohol content is due to a chemical reaction when the breath goes into the machine[.]" Also during cross-examination, Trooper Woodside replied "Yes" to the statement and question, "And you've already testified that you agree that the breath test tests for blood alcohol. So fair to say that a person's breath could be a substance to be tested for blood alcohol?"

_____

(. . . continued)
    purposes of determining the amount of alcohol or drugs in that person's blood
    or other bodily substance while driving a commercial or noncommercial motor
    vehicle in violation of . . . [SDCL] 32-12A-46[.]"

[¶8.]     Blazer testified that he sustained a severe concussion as a result of the accident and was out of work for approximately a month. He further testified that because of the injury he did not recall being read the implied consent statute by Trooper Woodside. He disagreed that his inability to recall the events of the evening was related to his consumption of alcohol, and he disagreed that he refused to submit to a chemical analysis, stating that he submitted to the breath test as requested by the officer.

[¶9.]     The Administrative Law Judge (ALJ) took the matter under advisement and thereafter issued a written proposed decision. The ALJ found that Blazer submitted to a PBT and the result was .102 percent. The ALJ further found that "Blazer refused to submit to a chemical analysis" as required by SDCL 32-12A-46 when he refused Trooper Woodside's request that he submit to a blood draw. The ALJ did not specifically address the question whether Blazer's submission to a breath test qualified as submitting to a "chemical analysis" under SDCL 32-12A-46. The ALJ concluded that Blazer's refusal to submit to a blood draw constituted a second offense under SDCL 32-12A-36. The ALJ thus proposed that Blazer's CDL be disqualified for life under SDCL 32-12A-37. The Department adopted the ALJ's proposed decision and issued its final decision disqualifying Blazer's CDL for life.

[¶10.]     Blazer appealed the Department's decision to the circuit court, and relevant to this appeal, he asserted that the Department erred in concluding that SDCL 32-12A-46 required him to submit to a blood test after he already submitted to a breath test. More specifically, he argued that his submission to the breath test satisfied his obligation under SDCL 32-12A-46 to submit to a chemical analysis of

an "other bodily substance" to determine the amount of alcohol in his blood. Blazer relied on Trooper Woodside's testimony that the Intoximeter measures blood alcohol content through a chemical reaction to one's breath. He further argued that because SDCL 32-12A-36(5) deems it a violation for a CDL holder to refuse to submit to "*a chemical analysis*" and Blazer submitted to a chemical analysis of his breath, the ALJ erred in concluding that his refusal to submit to a chemical analysis of his blood provides a basis for disqualifying his CDL.

[¶11.]        Before considering Blazer's arguments, the circuit court, in an email to the parties, asked them to submit additional briefing on the import of this Court's decision in *State v. Richards*, 378 N.W.2d 259 (S.D. 1985), which, according to the circuit court, "did rule that a breath test was a chemical analysis." In its brief, the Department argued that *Richards* does not apply because it concerned the presumptions arising from a chemical analysis for purposes of a criminal prosecution and not, as here, the statutory framework relevant to a CDL disqualification. The Department further asserted that SDCL 32-12A-36(5) "directly contemplates a determination of alcohol in a CDL holder's blood" and "SDCL 32-12A-46 directly contemplates a withdrawal of blood." Finally, the Department noted that under applicable federal regulations, adopted through SDCL 32-12A-58, "a refusal to be tested is [an] . . . offense which subjects the CDL holder to disqualification."

[¶12.]        In Blazer's supplemental brief, he argued that *Richards* applies to the question whether a breath test can accomplish a chemical analysis as referenced in SDCL 32-12A-36(5). He asserted that even though *Richards* concerned a different

statute, the Court broadly determined that a device measuring blood alcohol content from one's breath accomplishes a chemical analysis. *See* 378 N.W.2d at 262 (determining that "[t]he phrase 'chemical analysis' commonly includes 'tests for identifying chemical compounds by their physical properties, as the Intoxilyzer does'"). Blazer then argued that based on Trooper Woodside's testimony that the Intoximeter chemically analyzed Blazer's breath, his submission to the breath test satisfied his obligation to consent to a chemical analysis under SDCL 32-12A-46.

[¶13.]     In its memorandum decision, the circuit court determined that breath is an "other bodily substance" under SDCL 32-12A-46 and that based on *Richards*, the test of Blazer's breath constitutes a chemical analysis. The court then noted Trooper Woodside's testimony that the Intoximeter measures blood alcohol content. The court therefore held that Blazer complied with SDCL 32-12A-46 by submitting to a chemical analysis of his breath and issued an order reversing the ALJ's decision adopted by the Department.

[¶14.]     The Department appeals, asserting the circuit court erred in reversing the Department's decision disqualifying Blazer's CDL for life.

### Standard of Review

[¶15.]     "Our review of agency decisions is the same as the review made by the circuit court." *In re Jarman*, 2015 S.D. 8, ¶ 8, 860 N.W.2d 1, 5. Therefore, "[w]e perform that review of the agency's findings 'unaided by any presumption that the circuit court's decision was correct.'" *Id.* (citation omitted). In that regard, "[w]hen reviewing findings of fact we apply the clearly erroneous standard of review, giving great weight to the agency's findings and inferences drawn on questions of fact."

*Bonebright v. City of Miller*, 2020 S.D. 16, ¶ 13, 941 N.W.2d 231, 235 (citation omitted). It is well settled that "we review questions of statutory interpretation de novo." *Anderson v. Tri State Constr., LLC*, 2021 S.D. 50, ¶ 10, 964 N.W.2d 532, 536 (citation omitted). Similarly, when the issue on appeal concerning an agency's decision "is a question of law, the [agency's] actions are fully reviewable by this Court under the de novo standard." *Bonebright*, 2020 S.D. 16, ¶ 12, 941 N.W.2d at 235 (citation omitted).

## Analysis and Decision

[¶16.] The Department contends that Blazer's refusal to submit to a blood draw constitutes a disqualifying offense under SDCL 32-12A-36 regardless of Blazer's prior submission to a breath test during the same encounter. In response to Blazer's argument below that he was only required to submit to one chemical analysis, the Department directs this Court to SDCL 32-23-1.2, which provides:

> Every person operating a vehicle which has been involved in an accident or which is operated in violation of any of the provisions of this chapter shall, at the request of a law enforcement officer, *submit to a breath test* to be administered by such officer. If such test indicates that such operator has consumed alcohol, the law enforcement officer may require such operator to *submit to a chemical test* in the manner set forth in this chapter.

(Emphasis added.) The Department then refutes Blazer's reliance on *Richards* by noting this Court's decision in *Dep't of Pub. Safety v. Gates*, 350 N.W.2d 59 (S.D. 1984). In *Gates* we held that because SDCL 32-23-1.2 permits a PBT, which may be required in addition to a chemical test, Gates violated the applicable implied consent statute, SDCL 32-23-10, when he refused to submit to a blood draw after he submitted to a PBT. *Id.* at 61.

[¶17.]     In response, Blazer argues that although *Gates* concluded, based on SDCL 32-23-1.2, that both a PBT and a chemical test pursuant to SDCL 32-23-10 may be required, the Court "did not hold that a PBT can never accomplish a chemical analysis." Rather, in his view, this Court's decision in *Stensland v. Smith* controls and makes clear that a driver's implied consent extends to only *one* chemical test. *See* 79 S.D. 651, 654, 116 N.W.2d 653, 654 (1962). In *Stensland*, the Court interpreted the predecessor to SDCL 32-23-10, which provided that a driver is deemed to have given "consent to a chemical analysis of his blood, urine, breath[,] or other bodily substance[,]" to mean that the driver has given consent for "*only one of the tests* mentioned in our law." 116 N.W.2d at 653–54 (interpreting SDC Supp. 1960, § 44.0302-2) (emphasis added). As he did below, Blazer relies on *Richards* to support his argument that because Trooper Woodside testified that the Intoximeter measures blood alcohol content by a chemical reaction to one's breath, Blazer's submission to a breath test accomplished a chemical analysis. As such, he contends his submission to a chemical test of his breath satisfied SDCL 32-12A-46.

[¶18.]     Our review of the applicable statutes is guided by well-settled principles:

> "The purpose of statutory interpretation is to discover legislative intent." *State v. Bryant*, 2020 S.D. 49, ¶ 20, 948 N.W.2d 333, 338. "The starting point when interpreting a statute must always be the language itself." *Id.* "We therefore defer to the text where possible." *State v. Armstrong*, 2020 S.D. 6, ¶ 16, 939 N.W.2d 9, 13. "When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* "In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." *State v. Thoman*, 2021 S.D. 10, ¶ 17, 955 N.W.2d 759, 767.

*State v. Bettelyoun*, 2022 S.D. 14, ¶ 24, 972 N.W.2d 124, 131 (cleaned up).

[¶19.]        Under SDCL 32-12A-46:

> Any person who holds or is required to hold a commercial learner's permit or commercial driver license and operates any commercial or noncommercial motor vehicle in this state is considered to have given consent to the withdrawal of blood or other bodily substance to determine the amount of alcohol in that person's blood, or to determine the presence of any controlled drug or substance. The chemical analysis shall be administered at the direction of a law enforcement officer who, after stopping or detaining any person who holds or is required to hold a commercial learner's permit or commercial driver license, has probable cause to believe that the person was driving or in actual physical control of a commercial or noncommercial motor vehicle while having any alcohol or drugs in that person's system.

Notably, the chemical analysis being referred to in this statute may only be required *after* an officer has *probable cause* to believe the driver was driving with alcohol or drugs in his or her system. The statute further provides that when a person has been requested by an "officer under this section to submit to a chemical analysis[,]" the officer must advise the person that:

> (1) If the person refuses to submit to the chemical analysis, none may be given, unless a *warrant* for the chemical analysis is issued; and
>
> (2) If the person refuses to submit to the chemical analysis requested, the person shall be:
>
>> (a) Immediately placed out of service for a period of twenty-four hours, if operating a commercial motor vehicle at the time of the refusal; and
>>
>> (b) Disqualified from operating a commercial motor vehicle for a period of not less than one year; or
>
> (3) If the person submits to a chemical analysis which discloses that the person was operating the commercial motor vehicle

> while there was 0.04 percent or more by weight of alcohol in that person's blood the person shall be disqualified from operating a commercial motor vehicle for not less than one year.

*Id.* (emphasis added).

[¶20.]     It is undisputed that Trooper Woodside provided Blazer the required advisement when requesting that he submit to a blood draw. Further, it does not appear from the Department's appellate briefs that it disputes Blazer's claim that the PBT performed by Trooper Woodside accomplished a chemical analysis to determine blood alcohol content.[2] Thus, the crux of the issue on appeal is whether a CDL holder's refusal to give consent to a blood test after having already submitted to a PBT violates SDCL 32-12A-46 and thus constitutes a disqualifying offense under SDCL 32-12A-36(5). In answering this question, we turn to our prior decisions.

[¶21.]     In an argument that mirrors the one Blazer makes here, the defendant in *Gates* argued that the circuit court erred in determining that his refusal to submit to a blood test after submitting to a PBT constituted a failure to comply with SDCL 32-23-10. 350 N.W.2d at 61. At the time of Gates's arrest, SDCL 32-23-10 (the similarly worded counterpart to SDCL 32-12A-46) provided:

> Any person who operates any vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, urine, breath or other bodily substance for the purpose of determining the amount of alcohol in his blood, as provided in § 32-23-7, provided that such test is administered at the

---

2.     The ALJ did not make any findings regarding the validity of Trooper Woodside's opinion. However, Blazer relies extensively on this testimony on appeal, and the Department in no way challenges the accuracy of Trooper Woodside's opinion.

> direction of a law enforcement officer having lawfully arrested
> such person for a violation of § 32-23-1[.]

*Id.* (quoting SDCL 32-23-10 (1973)). This Court rejected Gates's argument, concluding that based on SDCL 32-23-1.2, a "preliminary breath test is permitted by law and may be required *in addition* to a chemical test pursuant to SDCL 32-23-10."[3] *Id.* (emphasis added).

[¶22.] Shortly after *Gates*, we issued a decision distinguishing the chemical test permitted under an implied consent statute from a breath test administered as a preliminary matter to determine whether alcohol was consumed. *State v. Anderson*, 359 N.W.2d 887 (S.D. 1984). In *Anderson*, the defendant argued that law enforcement could not subject him to a PBT because SDCL 32-23-10 only permits chemical analysis of a person's blood, breath, or other bodily substance *after* a lawful arrest has been made, and he was not placed under arrest until after the PBT.[4] *Id.* at 890. In response, the State argued that SDCL 32-23-10 "refers only to tests, the results of which may be admitted as evidence to show alcohol content in

---

3. When interpreting the predecessor to SDCL 32-23-10, the Court in *Stensland* determined that consent to "*a* chemical analysis" meant that the statutory implied consent extends only to *one* chemical test. 79 S.D. at 654, 116 N.W.2d at 654 (emphasis added). However, the Court in *Gates* noted that *Stensland* was decided before the Legislature enacted SDCL 32-23-1.2. *Gates*, 350 N.W.2d at 61. The *Gates* Court did not overrule *Stensland* but reconciled it with the statutes; it is apparent that the Court's holding hinged on the determination that the breath test authorized under SDCL 32-23-1.2 is *preliminary* and is separate from the additional chemical test that comes later. *See id.* & n.*.

4. *Anderson* did not involve a refusal to submit to a chemical analysis under SDCL 32-23-10. Rather, the issue on appeal concerned whether the circuit court properly suppressed all evidence derived from a traffic stop and arrest, including the results of a breathalyzer and blood test.

relation to SDCL 32-23-7," while "PBT results are not used as evidence of an alcohol content above or below .10, the presumptive level, but are only used as a pre-arrest sobriety test to establish probable cause for arrest and the administration of evidentiary tests, i.e., the blood test or the intoxilyzer." *Id.* at 891.

[¶23.] In rejecting Anderson's claim that he should not have been subjected to a PBT, the Court did not expressly conclude whether the PBT at issue and the Intoxilyzer were the same or whether one was a chemical test and the other was not. Rather, we focused on the distinction between the use of a PBT as a preliminary test to support a determination of probable cause and an "evidentiary chemical analysis" that is administered thereafter. *Id.* In doing so, the Court stated that "SDCL 32-23-10, which permits chemical analysis of a defendant's blood, breath[,] or other bodily substance after a lawful arrest has been made, must be read in pari materia with the rest of the chapter." *Id.* We then noted that the result of a chemical analysis conducted in accord with SDCL 32-23-10 gives rise to the statutory presumptions in SDCL 32-23-7, which may conclusively show a violation of SDCL 32-23-1(2). *Id.* After further noting that a "[r]efusal to submit to the chemical analysis permitted under SDCL 32-23-10" could "result in a driver's license revocation[,]" we observed that "the legislature's limitation of *evidentiary* chemical analysis to arrest situations is appropriate." *Id.* (emphasis added).

[¶24.] Particularly relevant to the Department's appeal here, the Court then determined that "SDCL 32-23-1.2 permits implementation of the PBT as a field sobriety test, which, like the traditional mental and physical dexterity tests, may be given upon reasonable suspicion that a person has violated SDCL 32-23-1." *Id.* at

892. We observed that "[t]he legislature would not have gone to the trouble of passing SDCL 32-23-1.2 if they did not intend it to go beyond the restrictions incorporated in SDCL 32-23-10." *Id.* Therefore, we held that a PBT may be administered despite the absence of probable cause for an arrest. *Id.* We further explained that although "PBT results may not be used as evidence against a defendant[,]" SDCL 32-23-1.2 provides that if a PBT indicates the driver has consumed alcohol, law enforcement may require the driver "to submit to a chemical test in the manner set forth in this chapter." *Id.*

[¶25.]      This Court's decision in *Richards* provides an example of *Anderson's* rationale in practice. In *Richards*, the trooper stopped the defendant's vehicle as part of a traffic check. 378 N.W.2d at 260. While issuing a warning ticket, the trooper observed that the defendant had "bloodshot eyes, slow and deliberate speech, and [a] strong odor" of alcohol. *Id.* The defendant agreed to take a PBT, and the test indicated the presence of alcohol. The trooper then arrested the defendant and took him to the county jail. At the county jail, the defendant took another breath test, via the Intoxilyzer, which showed a blood alcohol content of .15 percent.

[¶26.]      During the defendant's trial, the results of both breath tests were admitted into evidence over the defendant's objection, and he was ultimately convicted of violating SDCL 32-23-1(1). On appeal, he argued that neither the results from the first breath test nor the second could be admitted into evidence at trial. We determined that the circuit court erred in admitting evidence related to the first breath test because of our prior holding in *Anderson* that PBT results can

only be admitted when a defendant raises the issue of probable cause and grounds for an arrest. *Id.* (citing *Anderson*, 359 N.W.2d at 892).

[¶27.] In contrast, we upheld the circuit court's admission of the results of the Intoxilyzer under SDCL 32-23-7, which provides that a chemical analysis of the defendant's breath can give rise to certain presumptions. *Richards*, 378 N.W.2d at 261. Importantly, while *Richards* determined that the Intoxilyzer accomplished a chemical analysis to determine alcohol content, the case did not concern the interplay between SDCL 32-23-1.2 and our implied consent laws. Therefore, even if *Richards* supports a conclusion here that the Intoximeter used by the trooper to test Blazer's breath provided a chemical analysis to determine alcohol content, *Gates* and *Anderson* are more instructive on the question whether Blazer's submission to that breath test means he submitted to the chemical analysis contemplated by our implied consent laws.

[¶28.] As *Gates* and *Anderson* make clear, under SDCL 32-23-1.2, an officer may request that a driver submit to a preliminary breath test, and *if that test* indicates that the driver has consumed alcohol, then the officer may also *require* the driver to submit to a chemical test "in the manner set forth in [SDCL chapter 32-23]," the results of which may be admitted as evidence. *Gates*, 350 N.W.2d at 61; *Anderson*, 359 N.W.2d at 892. Under this type of scenario, the preliminary breath test does not accomplish the chemical analysis referenced in our implied consent laws. Rather, it is the subsequent chemical test that drivers are required to submit to under either SDCL 32-23-10 (following an arrest) or under SDCL 32-12A-46 (if law enforcement has probable cause to believe a CDL holder has been driving with

alcohol or drugs in that person's system). Therefore, although some types of breath tests might accomplish a chemical analysis to determine alcohol content, when such a test is administered as a preliminary matter to determine probable cause, consenting to that test does not excuse a driver from the requirement to submit to the chemical analysis required by SDCL 32-12A-46.

[¶29.] It is undisputed here that Trooper Woodside administered Blazer the breath test, via the Intoximeter, to confirm his suspicion that Blazer had consumed alcoholic beverages. After the result of the PBT indicated that Blazer had consumed alcohol and Trooper Woodside determined he had probable cause to believe Blazer was driving under the influence, the trooper was authorized under SDCL 32-23-1.2 and SDCL 32-12A-46 to require Blazer to submit to a chemical analysis of his blood. It is undisputed that Blazer refused to submit to such a test. Therefore, the ALJ properly determined that Blazer refused to submit to a chemical analysis of his blood as required by SDCL 32-12A-46, which constituted his second violation under SDCL 32-12A-36 and supported disqualification of his CDL for life under SDCL 32-12A-37. As such, the circuit court erred in reversing the ALJ's decision that was adopted by the Department. In light of this ruling, it is unnecessary to address the Department's second argument that the circuit court erred in failing to liberally interpret the laws governing CDL holders in favor of the public's interest and against the CDL driver involved.

[¶30.] Reversed.

[¶31.] JENSEN, Chief Justice, and KERN, SALTER, and MYREN, Justices, concur.